## BOHART, DILLINGHAM & CO. v. OBERNE, HOSICK & CO.

1. AGENT—*Extent of Authority*. Those who deal with an agent whose authority is limited to special purposes, are bound, at their peril, to know the extent of his authority.

2. —————— *Unauthorized Acts of Agent.* Authority given to an agent of a commission house to purchase hides, wool, furs and tallow, and to pay for the same with the funds furnished by his principals, does not authorize him to make advances of the money of his principals, nor to sell and guarantee the payment in his principals' name, of unsettled accounts that have been received in satisfaction of such unauthorized advances.

3. —————— *Unauthorized Contract made by Agent, not Ratified by Principal.* Where an agent makes a contract outside of his actual and apparent power, and the fruits of his contract are received by his principals in ignorance of the material facts, and without any knowledge that the contract had been made in their behalf or names, but were received and retained by them upon the information and understanding that the money was paid to satisfy in part a liability existing against the agent and in their favor, such receipt and retention will not amount to an adoption and ratification of the unauthorized contract.

*Error from Wyandotte District Court.*

BOHART, DILLINGHAM & COMPANY brought an action in the district court of Wyandotte county against *Oberne, Hosick & Company*, alleging that on July 5, 1883, the defendants sold to the plaintiffs certain property which was evidenced by a writing executed by the defendants and delivered to the plaintiffs, which is as follows:

"KANSAS CITY, Mo., July 5, 1883.—This is to certify, that we, the undersigned, have this day sold to Bohart, Dillingham & Co. our interest and title to the following property, consisting of meats, lard, wagons, horses and harness, book accounts, and fixtures in meat market No. 914, Mulberry street, Kansas City, Mo., for the sum of one thousand and five dollars, for which we acknowledge the receipt of payment; and we further bind ourselves to secure them in the above property, and to protect them against any claims against said property.
 (Signed)   OBERNE, HOSICK & Co.
     JOHN ELDRIDGE, *Manager*."

It was alleged that, among the book accounts mentioned in the written instrument, a certain number of them, amounting in the aggregate to $1,240.39, were not due to the defendants at the time they were sold to the plaintiffs, and that the parties against whom the accounts were charged had either paid off the same in full, or had offsets against the accounts sufficient to liquidate each and all of them. The plaintiffs further alleged that defendants had failed to secure them in the amount of said accounts against the claims of payments and offsets against said accounts, in accordance with the terms of the written agreement, and that by reason thereof the defendants were indebted to the plaintiffs in the sum of $1,240.39, for which they asked judgment. The answer of the defendants was a general denial, and also that John Eldridge, whose name purports to be signed to the written agreement, never had any authority from the defendants to execute the instrument, or any other of like nature. In reply, the plaintiffs alleged that the defendants ratified the acts of their agent, John Eldridge, in the sale of the accounts and other property to them.

The cause was referred to L. W. Keplinger, as referee, who reported the following findings of fact and conclusions of law:

"1. At the time of the transactions involved in this case the defendants were, and for some time had been, engaged in the hide and wool business, in the city of Chicago, state of Illinois.

"2. Defendants had numerous branch offices or places of business in various parts of the country, one of which was in Kansas City, Kansas, in charge of John Eldridge as general manager, with authority to purchase hides, wool, furs and tallow, and pay therefor with funds furnished by defendants; also, one J. Hosick, who is the father of one of the defendants, was the book-keeper of defendants at said Kansas City branch office.

"3. Withrow & Deo were proprietors of a meat market at Kansas City, and from time to time said Withrow & Deo sold and delivered hides, furs and tallow to said Eldridge as agent of defendants.

"4. One George Foster was the predecessor of Withrow & Deo in the meat market, and one Smith was the predecessor of Eldridge in the management of defendants' Kansas City branch; and at one time, while said Smith was such manager and while said Foster was proprietor of said meat market, said Smith made a loan of three hundred dollars on behalf of defendants to said Foster, with the knowledge and by authority of defendants.

"5. Except as stated in the foregoing finding, said branch office was never authorized to pay out any money save in payment for articles authorized to be purchased for defendants.

"6. From about the 12th or 13th of December, 1883, the parties in charge of said Kansas City branch advanced money of defendants to the amount of $300 to Withrow & Deo, and at the said last-named date took the note of said Withrow & Deo for said sum, which note was drawn payable to defendants, all of which was in the absence and without the knowledge or assent of defendants.

"7. From time to time after the taking of said note the said Eldridge, and Hosick, book-keeper, advanced other moneys belonging to defendants to said Withrow & Deo, without the knowledge or authority of defendants.

"8. About one month prior to the execution of the instrument sued on, one of the defendants visited the branch at Kansas City and examined the books and the account with said

Withrow & Deo, and directed that the same be closed up and settled, and forbade the making of any further advances; but after the giving of such order, said Eldridge & Hosick continued to make further advances to the additional amount of about five or six hundred dollars, without authority of defendants. The total of such unauthorized advances finally reached the sum of about $1,300. At the time of making such advances, the said Withrow & Deo agreed to repay the sums by selling to defendants' agent at said branch, hides, wool and tallow for defendants, but said advances were never repaid in that or in any other manner, save as hereinafter set forth.

"9. A day or two prior to the execution of the instrument set forth in the petition, Withrow & Deo executed bills of sale, which purported to convey to defendants all the book accounts of said Withrow & Deo, due from various parties to said Withrow & Deo, together with other articles of personal property mentioned in said instrument; and at the time of so doing said Withrow & Deo delivered to said Eldridge the book containing the amounts of those who were indebted to the said firm, as well as those to whom that firm was indebted; this transfer was on account of the indebtedness of said Withrow & Deo, on account of said advances; the said Eldridge within a day or two thereafter executed to plaintiffs the instrument mentioned in the petition, and credited the account of said Withrow & Deo for the amount received therefor, and thereafter accounted to defendants personally for the remainder of such indebtedness remaining still unsatisfied.

"10. Of the accounts set forth in the list attached to plaintiffs' petition, a small portion were true accounts of amounts due said Withrow & Deo, but a large part of said accounts, amounting to $1,160, did not represent any amounts due said Withrow & Deo, but accounts to that amount appear in said list as·being due from parties to whom said Withrow & Deo were indebted; but at the time of the execution of the instrument mentioned in the petition said Eldridge gave all of said accounts to plaintiffs as being the accounts referred to in and intended to be transferred by said agreement.

"11. The property mentioned in the instrument sued on, exclusive of book accounts, was of the value of about $300, and the same was, soon after the execution of said instrument, sold and disposed of by plaintiffs.

"12. The plaintiffs in payment for the purchases evidenced by said instrument sued on, credited defendants with the sum

of $45 due from defendants to plaintiffs on account, and also delivered to J. Hosick, the book-keeper before mentioned, a check for the sum of $1,005, payable to defendants' order, which check was indorsed by said Hosick in the following manner: 'Oberne, Hosick & Co., per J. Hosick,' and the same was presented to the bank by said book-keeper, and the amount thereof placed to defendants' credit.

"13. About the first of August, 1883, the defendants received a letter from the branch office at Kansas City informing them that Withrow & Deo had failed, owing the defendants the sum of about $1,300, and had transferred certain property to defendants' agents which they had converted into cash, and that said agents had themselves made up the remaining portion of said indebtedness, amounting to about $300.

"14. Defendants at the time of receiving such information did not know, nor did they know until after the commencement of this action, that said note from Deo, or said transfer to plaintiffs, or said check or the indorsement thereof, had been made or received in their behalf or names, or to them or on their account; and the defendants, up to the time this suit was brought, supposed and understood said Eldridge and Hosick had acted for themselves and on their own account in said matter, for the purpose of obtaining money with which to satisfy in part a liability from themselves personally to defendants by reason of their having advanced moneys to said Withrow & Deo contrary to defendants' order."

"CONCLUSIONS OF LAW.

"Eldridge was agent of defendants for special purposes only. The sale of the pretended accounts by Eldridge was beyond the scope of his authority as agent, and plaintiffs are chargeable with notice of the extent of his authority.

"Upon the issue presented by the pleadings as to ratification, I find that although a contract be authorized, a principal may retain the fruits of such contract and yet not be bound by an unauthorized warranty; that an alleged principal may retain the price of an unauthorized sale by one assuming to act as his agent without ratifying the same, where at the time of receiving the same he supposed the same to be delivered to him in satisfaction of a liability theretofore existing from such pretended agent to himself; that when an alleged principal receives the fruits of an unauthorized sale in satisfaction of a liability from the alleged agent, which existed prior to the making of the contract, the law will refer his retention of such fruits to such prior right rather than to the contract, and

such retention will not involve recognition of the contract; that there was no ratification by defendants of either the sale or warranty of said pretended accounts; and that defendants are entitled to judgment for costs."

The plaintiffs excepted to each of the findings of fact and conclusions of law, and also moved for a new trial of the cause, and to set aside the report of the referee, which motions were overruled. January 24, 1885, the court, upon the motion of the defendants, confirmed the report of the referee, and gave judgment against the plaintiffs for costs. To reverse these rulings, plaintiffs bring the case here.

*E. B. Gill*, for plaintiffs in error.

*J. B. Scroggs*, for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J.: The facts of this case can be ascertained only from the findings of the referee, and the findings appear to be fairly within the issues of the case. Involved in this case is the question of liability of the defendants for the unauthorized acts of their agent. John Eldridge was the agent of the defendants, and the extent of his authority was to purchase hides, wool, furs, and tallow, and to pay for the same with the funds furnished by the defendants. The power conferred did not authorize him to loan or advance the moneys of the defendants to their customers and others, nor to sell the property and accounts that he received in satisfaction of the unauthorized advances which he had made, much less to guarantee the payment of such accounts. His power was special and limited, and one to be strictly pursued, and the plaintiffs were bound at their peril to know the extent of his authority. Speaking generally, it may be said that the power given to an agent in such cases includes with it the authority to do whatever is usual and necessary to carry into effect the principal power conferred, but bartering in the property and fixtures of a meat

2. Unauthorized acts of agent.

1. Agent—extent of authority.

19 — 36 KAS.

market, and in the unsettled accounts of its former proprietor, was not incidental to the power conferred on Eldridge, nor necessary for its execution. It was outside of the apparent scope of his agency, and the facts in the case fairly justify the finding that the plaintiffs were chargeable with notice that Eldridge acted in excess of his authority.

It is claimed, however, that the defendants have rendered themselves liable in this action by the ratification of the unauthorized acts of their agent. The claim of ratification rests mainly upon the following facts: The unauthorized advances of the defendants' money made to Withrow & Deo by Eldridge, and the book-keeper, Hosick, amounted to about $1,300, and the property and accounts sold and guaranteed to the plaintiffs were received from Withrow & Deo in part payment of these advances. Bills of sale were executed purporting to convey the property and accounts to the defendants. Eldridge sold and transferred the property and accounts in the name of the defendants, and in payment the defendants were credited with $45, which they were owing to the plaintiffs, and the residue of the payment was made by means of the plaintiffs' check payable to the defendants' order. This check was indorsed by the book-keeper in the name of the defendants, and the amount of the check was placed to the defendants' credit in the bank.

It is argued that the accepting of the proceeds of the sale and guaranty, by defendants, was a ratification of the contract of sale made by their agent, and that they are liable to the plaintiffs for any breach of that contract, whether authorized by them or not. The general rule contended for, that by the receipt and retention of the benefits of the unauthorized act of an agent the principal thereby ratifies such act, may be conceded; but there can be no ratification without full knowledge of all the material facts. The defendants were wholly uninformed in regard to the transaction. They remained in ignorance of the fact that the purchase and sale had been made in their names or in their behalf until after this action

was begun. They never knew until that time that the check and the indorsement had been made or paid to them, or on their account. They had been informed of the unauthorized advances of their agent to Withrow & Deo, but they regarded and held the agents personally liable for such advances. When they were informed of the failure of Withrow & Deo, and that they had transferred their property and accounts to defendants' agents, they were told that Eldridge and Hosick had converted the property into cash, and had themselves made up and paid $300, which was the remaining portion of the indebtedness arising from the unauthorized advances. And until this suit was brought, the defendants understood that Eldridge and Hosick had acted for themselves and on their own account, and that the money received for the property and accounts purchased by plaintiffs was paid to and received by the defendants in satisfaction of the personal liability existing against the agents. It will thus be seen that the fruits of the transaction were received and retained by the defendants without any knowledge of what the transaction was. They were not received as the fruits of a contract made for them or in their behalf, but upon an independent liability existing between themselves and their agents. If the defendants had known of the material facts in the case, and that Eldridge and Hosick had acted for them and in their names, and then, with this knowledge, had retained and enjoyed the benefits of the transaction, they would be bound as fully as if they had given their agents authority in the first instance. The money which was placed to their credit was innocently held by them. The defendants could not disavow the acts of Eldridge, nor repudiate the transaction because they did not know that it had been made on their account until after the commencement of the present action. The receipt and retention of the fruits of the contract, under these circumstances, do not amount to a ratification of such contract, nor render the defendants liable in this action. (*Baldwin v. Burrows,* 47 N. Y. 199; *The Penn. Co. v. Dandridge,* 8 Gill & Johns. 323; *Roberts v. Rumley,* 58

3. Unauthorized contract made by agent, not ratified by principal.

Iowa, 301; same case, 12 N. W. Rep. 323; *Reynolds v. Ferree*, 86 Ill. 576; *Smith v. Tracy*, 36 N. Y. 79.)

We find no error in the rulings of the district court, and its judgment will therefore be affirmed.

All the Justices concurring.