(December 11, 1909.)

JOHN FINDLAY, Respondent, v. CHRISTIAN HILDEN-
BRAND, Appellant.

[105 Pac. 790.]

AGENCY—CONTRACT—RATIFICATION.

1. *Held,* that the evidence in this case does not support the findings and judgment of the trial court.

2. A ratification cannot take place without full knowledge of all the material facts, and where a person assumes to act as agent in making a contract, and the person with whom such contract is made proceeds to a performance of the same under protest from the principal, and during such performance is advised and notified by the principal that such person is not in his employ, and that no one had authority to employ him and that he does not desire or need his services, the mere fact that after the cessation of such labor the principal pays to such person an amount which he deems such

service is worth will not alone amount to a ratification of the contract made by the person. assuming to act as such agent, and will not support an action based upon such contract, upon the ground that the contract was ratified.

(Syllabus by the court.)

APPEAL from the District Court of the Seventh Judicial District, for Washington County. Hon. Ed. L. Bryan, Judge.

An action to recover upon a contract of employment to perform labor and for the foreclosure of a laborer's lien. Judgment for plaintiff. Defendant appeals. *Reversed.*

Lot L. Feltham, for Appellant.

The fact of Findlay's labor upon the Mayflower mine, or group of mines, is supported only by his own testimony. Neither Dennison nor French testified to having seen the work done by Findlay on the Mayflower mine, and so they, were not testifying to the value of the work from actual observation but from hearsay, and that hearsay came to them from Findlay alone. If agency can be proved by such statements, then anyone can assume to be the agent of another, or induce some one to appoint him as such agent, and then proceed to perform labor upon some property belonging to this other, and after rendering this pretended service, file his lien and foreclose it and secure through the court an enforcement of the same, regardless of whether the property owner wants the service performed or not. (*Ferris v. Baker,* 127 Cal. 520, 59 Pac. 937; *Santa Cruz Butchers' Union v. I. X. L. Lime Co.* (Cal.), 46 Pac. 382; *Gregory v. Loose,* 19 Wash. 599, 54 Pac. 33; *Murphy v. Gumaer,* 12 Colo. App. 472, 55 Pac. 951; *Moore v. Skyles,* 33 Mont. 135, 114 Am. St. 801, 82 Pac. 799, 3 L. R. A., N. S., 136; *St. Louis & S. F. Ry. Co. v. Brown,* 3 Kan. App. 260, 45 Pac. 118.)

Wm. B. Davidson, for Respondent.

Ratification is the express or implied adoption of the acts of another by one for whom the other assumes to be acting, but without authority; and this results as effectively to estab-

lish the duties, rights and liabilities of an agency as if the acts ratified had been fully authorized in the beginning. (1 Am. & Eng. Ency. of Law, 2d ed., 1181.)

"A ratification of the agent's acts may be tacit or express; and the principal's acts will be liberally construed in favor of a ratification." (*Flower v. Jones*, 7 Mart. (N. S.) 140; *Codwise v. Hacker*, 1 Caines (N. Y.), 526; *Fraser v. San Francisco Bridge Co.*, 103 Cal. 79, 36 Pac. 1037; *Johnston v. Berry*, 3 Ill. App. 256.)

STEWART, J.—The respondent brought this action to recover the sum of $122, balance claimed to be due for labor performed on the Mayflower mining claim and for the foreclosure of a lien. In the complaint the plaintiff alleged that the defendant was at all times mentioned in the complaint the owner of such mining claim; that on Jan. 9, 1907, he entered into a contract with the appellant by which he was employed to perform such labor, and that the appellant agreed to pay him for such labor the sum of four dollars per day to be paid in cash from time to time as needed during the progress of the work; and that the balance remaining due upon completion of said work was to be paid at such time; that under said contract between Jan. 9, 1907, and May 11, 1907, he performed eighty-four days of labor and has fully performed his part of said contract, the last of said labor being performed on May 10, 1907; that the total amount of said labor amounted to $336, and that there remains due thereon the sum of $122. Then follow the allegations with reference to the filing of the lien and the payment of the sum of $5 for the preparing of such lien and $1.45 for recording the same.

The defendant in his answer denies the making of the contract alleged in the complaint, and denies that the plaintiff was employed by the defendant to perform any labor on the Mayflower mine or any other mine or in any capacity whatever; denies that he ever agreed to pay the plaintiff, for any work or services, the sum of four dollars per day or any other sum; and denies that the plaintiff performed any labor

for the defendant between Jan. 9 and May 11, 1907, at his request or at all. The defendant admits that he paid plaintiff the sum of $214, and denies that the same was due plaintiff, or that plaintiff was entitled to the same or that the plaintiff had earned the same; denies that the plaintiff was entitled to a lien.

Upon these issues the court found that the defendant was the owner of the property described in the complaint at the time stated therein; that the plaintiff performed work thereon as a miner between Jan. 9, 1907, and May 10, 1907, to the number of 81½ days, and that the defendant agreed to pay for such labor the sum of four dollars per day, aggregating the sum of $326; that there was a balance due the plaintiff for such labor in the sum of $112 and interest amounting to $6.80. The court then finds the preparation and filing of the lien and the expenditure in the sum of $1.45 for filing the same and that $50 is a reasonable attorney's fee. A decree was entered accordingly. A motion for a new trial was made and overruled and this appeal is from the order overruling the motion for a new trial and from the judgment.

While there are a number of specifications of error assigned in relation to the admission of evidence, yet they are all involved in the question whether the evidence supports the findings of the trial court. The appellant contends that the evidence does not support the findings of the trial court.

It will be observed from the complaint that the plaintiff sought to recover upon a contract made between the plaintiff and the defendant. The main contention made by the appellant upon this appeal is that the evidence does not show that there was ever any contract made between the plaintiff and the defendant, or that the defendant in any way or manner employed the plaintiff to perform any work or labor upon the Mayflower mine.

The plaintiff when upon the witness-stand was asked, "State whether you had any agreement with Mr. Hildenbrand or any other person represented as his agent for work on this property." In answer to that he said he made an agreement with the party who was Mr. Hildenbrand's agent, Oscar

Olsen; that Olsen was assistant to Howard Dennison, who was superintendent of the Iron Springs Company; and that this occurred on the last days of 1906 or possibly in 1907, in the new year; that Olsen asked him to go into the tunnel on the Mayflower group and work wherever he thought it to the most advantage; that four dollars was agreed upon as the price to be paid for such work; that he commenced work on Jan. 15, 1907, and quit on May 10, 1907.

C. H. Dennison testified that in January, 1907, he was superintendent of the Iron Springs Mining Company; that Oscar Olsen was assistant during 1906 and 1907. "I notified Olsen to have someone do the assessment work on the Hildenbrand property. . . . . It was in December, 1906. I do not mean to be understood as saying that when I gave my orders to Mr. Olsen to have some work done on the Hildenbrand property that I was acting in the capacity of the superintendent of the Iron Springs Mining Co. I do not mean to state here and have this court construe that when I ordered this work done that I did it on behalf of the Iron Springs Company. . . . . As a matter of fact, the Iron Springs Mining Company never did have any interest in the Hildenbrand property. It never did authorize me as superintendent to have any work done on it as superintendent."

This was all the evidence given at the trial with reference to the plaintiff's employment by the defendant at and prior to the time the plaintiff commenced labor on the Mayflower mine, to recover which this action was brought. Hildenbrand, the defendant, was a resident of Iowa and had no personal conversation with the plaintiff with reference to this labor. It will thus be seen from this evidence that the plaintiff was not employed by the defendant to do this work or by anyone who had any authority to employ the plaintiff. Neither Olsen nor Dennison, as it appears from this evidence, had any authority to put the plaintiff to work upon the Mayflower group of mines at the time plaintiff claims to have commenced labor thereon. On Feb. 17, 1907, and a little more than a month after plaintiff testifies he commenced working on the

Mayflower group of mines, he wrote a letter to the defendant in which he states:

"You will perhaps be a little surprised to get a letter from me, but as they have put me to work on your property, with instructions to try and find the ledge in place, and to do the work where I thought best. Now, it seems to me that the best place to° work would be to sink on that wall, and get the course of it, and then when the snow gets off, try and trace it down the hill a ways, perhaps down about where the trail goes along, then there would be a chance to get a good depth on it. What would be your idea, you are better acquainted with the surface than I am, just now I am work on a cross-cut to the wall, when I get to it I calculate to sink, would like to hear from your soon.

"Yours truly,<br>"JOHN FINDLAY."

It will thus be seen that this letter does not disclose by whom the plaintiff was employed, but he anticipates that the defendant no doubt will be surprised because he is working upon the Mayflower group of mines, and there is no intimation that such labor is for the purpose of doing assessment work or holding the property, or that it is necessary to do such work, but the letter seems to be of a nature to indicate that someone had put the plaintiff to work for the sole purpose of finding the ledge or that the work was of a prospecting character. On Feb. 28 the defendant answers plaintiff's letter of Feb. 17, and in which the defendant writes:

"I received your letter and seen that you was going to work. I was down town and seen Mr. Steward yesterday and he says he knows nothing about you should go to work so who put you to work there. I was general manager in the compy it would ben my place to hire but i am out of the Compy i got my mines back again, now if you don any work so you get your money from the one that put you to work I dont need to do any more work the patend was so neer as the plates went up in december some time as Harris and Smith of Weiser wrote me that they would see to it that the plades would be there in time.

"Now if you are working then you better quit because i dont haf to work on my mines."

From this letter it clearly indicates that the defendant does not ratify or indorse any employment of the plaintiff to do such work, and that the plaintiff must look to someone else for his pay. On Mar. 12, 1907, the plaintiff wrote to Harris & Smith of Weiser, stating that he had been working on Chris Hildenbrand's property for Dennison, and had received orders to quit and stating that there was not enough work done to hold the property for last year and no plat of survey posted; that the property would be open to relocation and that he would hold it until he heard from Harris & Smith, as Hildenbrand's attorneys. Thus, up to this time, it must be conceded that the plaintiff had no authorization from the defendant to perform any labor or authority from anyone who was the agent of Hildenbrand to have such work done. On Mar. 18 Hildenbrand wrote the plaintiff again, in which letter he states that he would tell Harris & Smith, his lawyers, to send to Findlay the plats for him to post and that he would pay for the same; and in which he uses this language: "You said in your letter who put you to work on my property, if the iron spring compy put you to work then i will pay you.

"Now let me know by return mail what you do."

Upon the language quoted from this letter, it is the contention of the respondent that Hildenbrand ratified the employment of Findlay and agreed to pay him for such work. Reading this language in connection with the testimony of Dennison and Findlay, it clearly appears that the Iron Springs Company did not put Findlay to work upon the Hildenbrand property. Dennison specifically states that "I do not mean to state here and have this court construe that when I ordered this work done that I did it on behalf of the Iron Springs Company. . . . . As a matter of fact, the Iron Springs Mining Company never did have any interest in the Hildenbrand property. It never did authorize me as superintendent to have any work done on it as superintendent." The only conclusion that can be drawn from the evidence is

that Findlay was put to work by Dennison and not by the Iron Springs Mining Company. Findley states in his letter to Harris & Smith, ''As I have been working on Chris Hildenbrand's property for C. H. Dennison, and have got orders to quit,'' evidently in this letter Mr. Findlay states the facts that he was working for C. H. Dennison and that he received orders to quit from Mr. Hildenbrand as soon as Hildenbrand was advised of the fact that he was working on his property.

We are unable to construe the language used in the letter of Hildenbrand on Mar. 18 into a ratification or approval of the work Findlay may have done upon the order of Dennison or that it in any way obligated Hildenbrand to pay for such work. On Mar. 23, 1907, Findlay wrote the defendant again, in which he says:

''Your letter of the 18th received today. J. E. Stewart wrote me after you talked with him, he told me to quit work. Denison is the one that put me to work, or rather Oscar Olson, by Denison's orders, I did not want to leave here when I got the letter from Stewart, because I thought your claims were liabled to jumped. They are liable to yet unless I stay here and keep to work on them till the plats are posted.

''Now do you want me to do this. If so, I need some money, as I have not had any pay since I went to work for the Iron Springs Co.

''I will tend to the plates if they come, and keep to work till I hear from you again.''

Thus at this date and after the plaintiff had received the letter of the defendant dated on Mar. 18, the plaintiff admits that Dennison is the one who put him to work or Olsen upon Dennison's orders; and that he would continue to work until the plats were posted, and again asks if the defendant desired him to do this. On Apr. 11 the defendant sent the plaintiff $50, but said nothing whatever about the plaintiff continuing his employment. On Apr. 17 the plaintiff wrote the defendant, admitting the receipt of the $50, and says: ''You dont say whether you want me to stay here till the assessment work is done or not. If you do, I wish you would say where you want the work done.'' Thus on Apr. 17 the

plaintiff did not contend that the defendant was under any obligations by reason of his employment and well recognized that his employment by the defendant was in doubt and inquired again whether the defendant desired him to remain and continue the work. On May 1, 1907, the defendant wrote the plaintiff again, in which he stated to him:

"I think there is enough work don for last year and for this year i dont need to work for this year yet; as last year i had two men working at the Mary and the over and if you don as mutch work as you say then there is more than what is nesery to be done; as soon as the road is open then i will be out there and i will setled with you."

It will thus be seen that by this letter the defendant again notifies the plaintiff that he does not desire him to perform labor on his property, but that he would pay him for what he had done. On May 27, and after the plaintiff claims to have ceased work, he received another letter from the defendant in which the defendant says:

"I received your letter and seen that you wont the money i wrote to you in April and told you to sent me the bill and then it was $200  $71 dollars and now you wont more how dose that come i did not tell you to do aney more work so how can you rase more i will be there as soon as the roads are open and when i get there i receved the work my self and if you wont to leave before i get there then i can leve the money by Barton in Weiser, when i get there then i wont to see who put you to work  I sold the minos middle of Oct to steawart and in Febery i bought my mines back again and if he put you to work then i see when i get there that he will pay you to it is his place to pay you.  Howard Dennes had no wright to put you to work on my property they got to ask me first."

On Nov. 24, 1907, the defendant wrote the plaintiff again, in which he says:

"I got your letters and seen that you still wont more money dident i settled with your agents one you told you work 40 days and the other you told you worked 50 days so what more do you wont i have withness to that that you told one

40 and the other 50 and i paid you $4 a day and that is 50 cts more than any miners charge in that part of country why dident you sent me the check that i left you if it was not enough then why dident you make atech on my property then i would like to got you and dennes and steawert i would only like to get you 3 together and then i would find out who put you to work and who put you to work would pay you to; i told you i would pay you as soon as i receved the work i receved the work and i payed you more then you ought to have.''

This is practically all of the evidence offered at the trial with reference to the plaintiff's employment and the defendant's knowledge and recognition of the same; and upon this evidence the court found that the plaintiff performed work and labor for the defendant between Jan. 9, 1907, and May 10, 1907, to the number of eighty-one and one-half days, and that the said defendant agreed to pay the plaintiff for such labor and services the sum of four dollars per day. From the undisputed evidence it appears that the defendant at all times protested against the plaintiff performing work on the property of the defendant, and repeatedly notified the plaintiff of that fact and repeatedly inquired of the plaintiff as to who employed him, and at no time recognized or ratified the acts of either Dennison or Olsen in employing the plaintiff. While it may be admitted that in the letter written by the defendant on Mar. 18 the defendant notified the plaintiff that if the Iron Springs Company put him to work, then the defendant would pay him, yet the undisputed evidence shows that the Iron Springs Company did not put the plaintiff to work or employ him, but that he was employed by Dennison, not as superintendent of the Iron Springs Company, but solely upon his own account; and this employment was in no way ratified or approved by the defendant. In every letter written by the defendant he certainly gave the plaintiff to understand that the plaintiff was not working for him and that he should quit, and did all in his power to cause the plaintiff to cease labor upon the defendant's property and that he must look to the party who employed him for his

pay. The fact that the defendant stated that if the Iron Springs Company put the plaintiff to work, the defendant would pay him, cannot be construed into a ratification of a contract made by Dennison upon his own account and in which Dennison employed the plaintiff to perform such work. A ratification of an employment made by the Iron Springs Company is not a ratification of an employment made by Dennison.

A ratification cannot take place without full knowledge of all the material facts. (31 Cyc. 1253; *Bohart, Dillingham & Co. v. Oberne-Hosick & Co.*, 36 Kan. 284, 13 Pac. 388; *Brown v. Rouse*, 104 Cal. 672, 38 Pac. 507; 1 Clark & Skyles on Agency, sec. 106.) The defendant at no time was informed of the nature or character of the contract made between Olsen and the plaintiff, or in what capacity Olsen was acting at the time such contract was made. It also appears that upon receipt of a letter from the plaintiff, advising the defendant that someone might jump his claim and he thought he had better stay there until the plats were posted in the proceedings for patent, the defendant sent him $50; this, however, does not amount to a ratification of the plaintiff's employment, but, on the contrary, shows that the defendant was intending only to compensate the plaintiff for work in and about the posting of notices and plats, and was in no way a payment upon the contract made by Dennison. It appears, also, that after the termination of the plaintiff's work upon the defendant's premises and after the defendant had examined the work done by the plaintiff, the defendant paid him an additional sum of $164. This could not amount to a ratification of the plaintiff's employment, but rather showed a disposition on the part of the defendant to compensate the plaintiff for such labor as he had done, notwithstanding the fact that it was done without the defendant's authority. None of the acts on the part of the defendant show that the defendant was advised of the nature or character of the contract made by Olsen or Dennison with the plaintiff, or that the defendant did any act recognizing or ratifying such contract.

The fact that a person assumes to act as agent in making a contract, and the person with whom such contract is made proceeds to a performance of the same, under protest from the principal, and during such performance is advised and notified by the principal that such person is not in his employ, that no one had any authority to employ him, and that he does not desire or need his services, in connection with the mere fact that after the cessation of such labor the principal pays to such person an amount which he deems such service is worth, will not amount to a ratification of the contract made by the person assuming to act as such agent, and will not support an action based upon such contract, upon the ground that the contract was ratified.

We have carefully examined the evidence in this case and are unable to find any substantial evidence supporting the findings· of the trial court. To our minds, the evidence conclusively shows that the plaintiff was never· employed by the defendant, and that the defendant never ratified the employment made by Olsen and Dennison; that in employing the plaintiff Olsen was acting for Dennison alone and not for the defendant or the Iron Springs Company; and that the facts of this case do not show either an express or implied ratification of such employment upon behalf of the defendant. The judgment is *reversed,* and the trial court directed to make findings in accordance with this opinion and to enter judgment accordingly. Costs awarded to the *appellant.*

Sullivan, C. J., and Ailshie, J., concur.