Filed Feb. 23, 1895.

---

No. 1,176.

## WILLISON v. McKAIN ET AL.

AGENCY.—*Evidence.*—*Proof of Transaction Before Proof of Authority or Ratification.*—*Harmless Error.*—Evidence of a transaction between an agent and a third party, before proof is made of such agency or ratification, is not harmful error where the subsequent evidence discloses such authority or ratification of the agent's act.

SAME.—*Unauthorized Act.*—*Ratification.*—*Burden of Proof.*—If an agent act outside of the apparent scope of his authority, the burden is upon the one dealing with him to prove that the principal ratified such act.

SAME.—*Ratification, When Only to Extent of Knowledge of Terms of Contract.*—A principal, when advised as to all the facts, can not elect to approve in part and reject in part, but where the principal receives his information as to the terms of the contract from the op-

posite party, and ratifies the contract thus communicated, acceptance of benefits under it can not be regarded as a ratification of additional provisions of such contract, as to which he had no knowledge, but only binds the principal so far as he was informed of the terms of the contract.

EVIDENCE.—*Answer Indicating That Witness' Knowledge is Hearsay.*— *Effect.—Striking Out.*—Where an answer of a witness indicates that his knowledge on a subject is mere hearsay, it will not be sufficient cause for striking out his entire evidence on the subject, but should be taken in connection with the remainder of his testimony as affecting its weight.

From the Marion Superior Court.

*W. N. Harding, A. R. Hovey* and *C. M. Cooper,* for appellant.

*J. P. Baker, W. H. H. Miller, F. Winter* and *J. B. Elam,* for appellees.

GAVIN, J.—Appellant sued appellees on an open account for goods sold and delivered, aggregating, in amount, $676.

Appellees filed a counterclaim for damages growing out of a breach of a contract. A jury trial resulted in a verdict for appellees for $150, upon which judgment was rendered over appellant's motion for a new trial, to which exception was taken.

Appellant was a wholesale granite and marble monument dealer, residing in Massachusetts. Appellees were also dealers in monuments at Indianapolis, doing principally a retail business, but selling some to the trade. One McLane was appellant's traveling salesman, whose ordinary duties were to sell, not buy, monuments for appellant.

He was known to appellees as such salesman, and at one time suggested that he would like to sell their "rustic oolitic limestone monuments" as a side line on his individual account.

Afterwards, about the 1st of March, 1890, an arrange-

ment was made between him and appellees by which he received from them certain designs of monuments drawn on silk, from which he was to sell their monuments and receive twenty per cent. commission. This arrangement being made, not on his personal account, but for Willison, to whom his time belonged, as he then informed appellees. The testimony of McLane and of appellees as to the exact terms of this arrangement is decidedly at variance.

Objection was made to proof of the transaction between McLane and appellees because there had been no proof of authority in McLane. It is, however, conceded by counsel that if the subsequent evidence did disclose his authority or a ratification of his act then there was no harmful error, although there was no precedent proof of the agency. *Rowell* v. *Klein,* 44 Ind. 290; *Shepherd* v. *Goben,* 39 N. E. Rep. 506.

Counsel's position is that since all those who had any knowledge of the terms of McLane's employment testify that he was an agent to sell, and not to buy, therefore his dealing with appellees was wholly without the scope of his agency, and could not bind appellant. We are of opinion that the correspondence between the parties clearly shows that after knowledge of some agreement with McLane on his behalf, not for a single sale only, but contemplating a series of sales, Willison ratified and approved it as such a continuing arrangement. This being true, the evidence of the transaction was properly received, and although part of it may have related to some portion of the contract not ratified by appellant yet it was all so closely blended together that there was no error in overruling the objection. The objection to evidence as to the amount of labor required to prepare the designs was too general to present any question here.

*McCloskey, Admr.,* v. *Davis,* 8 Ind. App. 190; *Chicago, etc., R. W. Co.* v. *Champion,* 9 Ind. App. 510.

One witness, on his original examination, testified that a certain design was original with his firm. After giving various reasons why he thought so he, on cross-examination, made such answer to one question as indicated that his knowledge on this subject was mere hearsay. The latter statement, however, when taken in connection with the remainder of his evidence, only went to affect the weight of the witness' testimony. It was not sufficient to require the court to strike out his entire evidence upon this subject.

It is also claimed that there is no evidence authorizing the jury to find in favor of the appellees the amount allowed them on their counterclaim. Appellant's account of $676 was undisputed. This amount, added to the $150 which the verdict gave to the appellees, makes their allowance upon the counterclaim $826 exclusive of interest. Under the facts, as we view them, this allowance can not be sustained.

On March 8, 1890, McLane sent to appellees an order for a monument, with the statement that Willison and they could determine as to whether the shipment should be to Willison, he to be responsible to appellees for the price or direct to the purchaser, appellees paying to Willison the commission. On the same day McLane wrote Willison notifying him of these facts. On March 18 Willison wrote appellees that McLane had notified him of this order and "He asks us to write you and find out if everything is fully understood. He states that this is your design and this is the reason he had placed the order in your hands. Please advise me if you are proceeding on same, and what the cost is going to be, terms of payment, etc., and oblige."

To this appellees responded: "Yours of 18th at hand. In reply will say the arrangement we made with McLane is this; we do a great deal of rustic work and we gave Mac some designs to sell from, and we were to pay him or rather you twenty per cent. for selling the work. Now, it makes little or no difference to us, if the orders are taken in your name or ours. If they are taken in your name, we will look to you for our pay, less the twenty per cent., and if they are taken in our name we will ship direct to the parties, and look to them for our pay and pay you the twenty per cent. Let us know which you prefer."

On April 19 a second order was sent to appellees by McLane. Appellant also was notified of this order by him and wrote appellees concerning it.

On April 24 Willison wrote them: "I wish in the future that in shipping any work for us that you would mark the railroad receipt as work being received from me, as I do not care for the other parties to know who this work is coming from."

So far as the evidence discloses appellant's only knowledge of the terms of the contract between his agent and appellees was derived from appellee's letter answering his of the 18th of March, and McLane's letter stating that he had ordered a certain monument from appellees, "your commission on this is twenty per cent."

Counsel for appellees do not seem to make any serious claim that the contract with McLane was within the scope of his agency, but base their case upon the theory that appellant ratified the same, and is, therefore, bound by it.

The unauthorized act of an agent may undoubtedly be ratified by the principal, and when so ratified he will be bound thereby. This ratification may be either expressed

in words or it may be implied from the conduct of the principal.

In order, however, to make the ratification binding upon the principal it must, as a general rule, appear that it was made with full knowledge of all the material facts connected with the transaction to which it relates, and that the existence of the contract, its nature and consideration were known to him. If these are unknown to him, except as the result of his intentional and deliberate act the ratification can not be enforced. Mechem Agency, section 129.

A ratification may be implied from the acceptance of the benefits of the unauthorized act.

If the principal knowingly appropriates to himself the fruits of his agent's unauthorized act he can not be heard to declare that it was done without his authority. Neither can he take the benefits and reject the burdens: he must as a rule accept or reject the whole contract. But here, as in other cases, it is indispensable that the principal should have had full knowledge of the material facts, or that he should have intentionally accepted the benefits without inquiry. Otherwise the receipt and retention of the benefits of the unauthorized act can not be deemed a ratification of it. Mechem Agency, section 148; *Kelley* v. *Newburyport Horse R. R. Co.*, 141 Mass. 496; *Bohart* v. *Oberne*, 36 Kan. 284; *Baldwin* v. *Burrows*, 47 N. Y. 199; *Smith* v. *Tracy*, 36 N. Y. 79; *Hauss* v. *Niblack*, 80 Ind. 407; *United States Ex. Co.* v. *Rawson*, 106 Ind. 215; *Manning* v. *Gasharie*, 27 Ind. 399.

In *Davis* v. *Talbot*, 137 Ind. 235, it is said by HACKNEY, J.: "No other act of ratification appears, unless it can be said that the acceptance and retention of the money of the solvent debtors could be properly so considered, but before such acts can be held a ratification it must appear that the acceptance or retention was with

knowledge of the agreement so in excess of the agent's authority.''

Where the agent acts outside of even the apparent scope of his authority, as here, the burden is upon the one dealing with him to prove the ratification. *Davis* v. *Talbot, supra.*

Under the evidence in this case appellant had no knowledge of the contract between McLane and appellees being any broader or more far-reaching in its terms than was stated in appellees' own letter to him, *i. e.,* "We gave Mac some designs to sell from and we were to pay him or rather you 20 per cent. for selling the work.'' Appellees, in their evidence, claimed that McLane was, by the agreement, to canvass diligently and devote his time to making sales for their work, and was to have the exclusive right to sell it to the trade. Such terms, if made, were not communicated to appellant. He had a right to believe that appellees had correctly informed him as to the material features of their arrangement with his agent, and his ratification of this arrangement, by accepting the benefits under it, can not be deemed to extend farther than he was informed thereof.

The principal can not, indeed, when advised as to all the facts, elect to approve in part and reject in part, but having received his information as to the terms of the contract from the other party, and having ratified the contract thus communicated, his acceptance of benefits under it can not be regarded as a ratification of additional provisions of such contract as to which he had no information. Appellant not only received benefits under the contract, the twenty per cent. commission on sales of their work made by him, but he rendered to appellees all the return to which he understood them to be entitled by the services of his agent in making the sales.

In our opinion, so far as appellant was informed of

Willison *v.* McKain *et al.*

the terms of the contract, he must be held bound thereby, but no further.

Under this arrangement, as reported to him, appellees were entitled to the benefit of all sales made by McLane from their designs, and appellant had no right to the designs themselves except for use in sales of appellees' work. Appellant, however, was not liable to respond in damages for the failure to push the sale of appellees' wares. Loss of profits on sales not made by McLane was not therefore recoverable.

Appellant took orders on these designs amounting to $400, and gave the work to other parties instead of to appellees, who thereby lost their profits thereon, $120. The value of the designs, at the outside figure, was $250. These sums, $370 in all, are the utmost amount which should have been allowed appellees on their counterclaim.

If the appellees shall, within forty days, file their written consent that an order shall be made directing the rendition of a judgment against them for $375, then this judgment shall be reversed, with instructions to the trial court to render judgment in favor of appellant and against appellees for that amount. Otherwise the judgment will be reversed, with instructions to grant a new trial. Costs in either event against appellees.

Filed Feb. 26, 1895.