## WAGNER *v.* McCOOL ET AL.

[No. 7,779. Filed January 9, 1913.]

1. PRINCIPAL AND AGENT.—*Authority of Agent.—Evidence.—Suf-
ficiency.*—In an action to quiet plaintiffs' title to real estate held
by defendant under a deed conveying the land as security for a
loan made to plaintiffs, and to compel a reconveyance, where
plaintiffs had repaid the loan to an attorney by whom such loan
had been made for defendant, evidence showing that interest pay-
ments had been made to such attorney and credited on the note
by defendant, that on plaintiffs offering to repay the loan at a
semi-annual interest date such attorney informed them that he
could not accept payment except at an anniversary date, that
shortly before the next anniversary date, defendant, at the re-
quest of such attorney and to enable him to "look something
up," left with him the papers connected with such loan, that when
plaintiffs went to the office of such attorney to repay the loan, the
attorney was not in, and, on being called by telephone, directed
plaintiffs to leave a check for the amount and said that he would
send them the papers to which they were entitled, and that
plaintiffs then left a check for the amount at the office of such
attorney, who cashed the same and disappeared, was sufficient

to justify a finding that such attorney was at no time acting as the agent of plaintiffs, but was the agent of the defendant. pp. 127, 135.

2. PRINCIPAL AND AGENT.—*Authority of Agent.—Evidence.—Letter Written by Agent.*—A letter written by an attorney, who had negotiated a loan for defendant, informing plaintiffs that he could not accept payment of the principal at a semi-annual interest date, that under the contract, from which he quoted, such payment could be made only at an anniversary date, and asking plaintiffs to remit the amount of the interest payment, though not constituting evidence establishing the agency of such attorney, is important as tending to show that he had possession of the papers connected with the loan and was assuming to act in the matter of the collection of the note in question previous to the time of its payment. p. 133.

3. PRINCIPAL AND AGENT.—*Authority of Agent.—Apparent Authority.*—Where the acts of a principal are such as to justify innocent third persons, who have relied thereon, in believing that the agent is authorized to do that which he does, although the agent in fact had no such authority, the principal is bound thereby, under the rule that where one of two innocent persons must suffer because of the betrayal of a trust reposed in a third, the person most at fault must bear the loss. p. 134.

From Vanderburgh Circuit Court; *C. A. DeBruler*, Judge.

Action by Henry F. McCool and another against Margaret Wagner. From a judgment for plaintiffs, the defendant appeals. *Affirmed.*

*Henry Kister, W. D. Robinson* and *W. E. Stilwell*, for appellant.

*Albert W. Funkhouser* and *Arthur F. Funkhouser*, for appellees.

HOTTEL, J.—The complaint in this case is in one paragraph and avers, in substance, that on the 6th·day of January, 1908, appellees were the owners of certain described real estate, which they on said day,· by a deed of general warranty, conveyed to appellant to secure the payment of a note, for the sum of $500, on said day executed by appellees as evidence of a loan then made by appellant to appellees: that at the same time and as a part of the same transaction the appellant by her agreement in writing, which is set out

in said complaint, agreed to reconvey said real estate to appellees on full payment by them of the loan evidenced by said note according to the terms and conditions of said agreement; that said agreement provided that such note might be paid by appellees "on any annual anniversary of said contract;" that on the 5th day of January, 1909, appellees fully paid said note, and performed all the conditions of said contract on their part to be performed, and demanded a reconveyance of said real estate by quitclaim deed, which appellant refused.

Appellees ask that appellant be compelled to execute to appellees a deed to the real estate so conveyed by them, that they be declared to be the owners of the same, and that their title thereto be quieted. A demurrer to this complaint was overruled, and appellant filed her answer in denial and a cross-complaint. The cross-complaint alleges the execution and delivery of the several instruments mentioned in the complaint, and sets out each, and avers, in substance, that the deed mentioned was executed to secure the payment of the note, and that it and the written agreement to reconvey were intended as a mortgage and should be so construed.

The averments of the complaint and cross-complaint are in substance and effect the same, except that the complaint avers the payment of the note and compliance with the terms of the agreement, and asks a reconveyance of the real estate according to the terms of the agreement, and that appellees' title be quieted therein, while the cross-complaint alleges that the note is unpaid and other violations of the terms of said agreement, and asks that the deed be declared a mortgage and for a foreclosure and sale of the mortgaged premises to satisfy the debt. A denial to the cross-complaint closed the issues. Pursuant to the request of appellant, the court made a special finding of facts and stated its conclusions of law thereon. On this finding there was judgment for appellees.

A motion for a new trial filed by appellant was overruled and exceptions properly saved.

The assigned error presenting the ruling on this motion is the only question discussed in appellant's brief. In fact, the only question presented by appellant's counsel in their brief under their points and authorities or discussed in their argument is the sufficiency of the evidence to sustain the decision.

There is little dispute between appellant and appellees as to any issue of law or of fact, except that relating to the question of the agency of the attorney to whom appellees executed the check given in payment of the debt represented by the note given by appellees to appellant. Inasmuch as the facts found by the court, except the ultimate fact of agency, hereinafter referred to, are, in effect, conceded by appellant to be supported by the evidence, instead of attempting to set out the evidence, we will set out the findings based thereon, which we think important in determining the question here involved. They are, in substance, as follows:

Appellees about the last of December, 1907, having theretofore been informed that Louis J. Herman, a practicing attorney of the city of Evansville, had a client or clients who had money to loan, applied to said Herman for a loan of $500, and on the 6th day of January, 1908, appellees borrowed of appellant said sum, for which they executed to appellant their note for that amount, payable three years after date at the Commercial Bank, Evansville, Indiana, with 7 per cent interest after date. Neither of appellees had any personal acquaintance with the appellant. They had never seen her, and had no conversation or dealings with her, except through said Herman. The execution and delivery of the other papers mentioned in the complaint are found and their contents set out, and the findings then proceed, in substance, as follows: (4) and (5) That before making said

loan said Herman, on behalf of appellant, examined the abstract of title to the real estate described in said deed, and personally examined the property therein described, with a view of determining its value as security for said loan, prepared the note, the deed and the title bond hereinabove referred to, and took the acknowledgment on the deed as a notary public. (6) That on the delivery of the papers above set out said Herman gave to appellees his personal check for $490 retaining out of the loan $10 to cover his services in connection with making the loan. (7) That appellant made said loan to appellees through said Herman, either under instructions from herself directly or by one Bernard Ewers, in whose home appellant then lived as his housekeeper, and she continued to reside with said Ewers until his death on the 23rd day of December, 1908. (8) In making said loan appellant entrusted the preparation of the note and other papers securing the loan to said Herman, and relied solely on his judgment as to the title of the property described in the complaint and as to the value thereof, and as to its sufficiency as security for said loan. (9) and (10) On and continuously since the 6th day of January, 1908, appellees have resided in the city of Evansville, where the property described in the complaint is located. (11) Said Herman disappeared from Evansville on the 9th day of January, 1909, and has not since been seen or heard of by any of the parties to this suit. (12) On the 1st day of July, 1908, appellees by the check of Henry McCool payable to "Louis J. Herman, Atty.," paid to said Herman $17.50, the interest on said note, and appellant credited said payment by indorsement on the back of said note on the 6th day of July, 1908; said check was for $94.50, and included $77 interest on another loan which appellees then had from Bernard Ewers, as well as the $17.50 interest on the loan which they had received from appellant. (13) Shortly before the 30th day of June, 1908, appellees offered

to pay said Herman said note, but he refused to accept the same, because said note was not then due, and under the terms of the contract and loan appellees had the privilege of paying said note only at an annual anniversary thereof, and January 6, 1909, was such anniversary. (14) At and since the time said loan of $500 was made to appellees, and from five to seven years prior thereto, said Herman had acted for appellant, as her agent and attorney for the negotiation and collection of other loans in Vanderburgh county. (15) Said note for $500 was never deposited at the Commercial Bank, Evansville, Indiana, for payment or collection. (17) On January 5, 1909, appellee Henry F. McCool called at the office of said Herman, in the city of Evansville, for the purpose of paying said note. Said Herman was not then at his office, but was at the courthouse, and by telephone directed said McCool to leave his check for $517.50, in full payment of said note and loan, at the office of said Herman, and promised said McCool to send to his (McCool's) office the papers in connection with said loan, and to which he was entitled on the payment of the same; that thereupon said McCool delivered to said Herman his check on the Mercantile National Bank of Evansville, Indiana, dated January 5, 1909, for $517.50, payable to "Louis J. Herman, Atty." A few days thereafter said papers, except a deed from appellant to appellees, were sent to appellees by the stenographer in charge of and employed in the office of said Herman. Said Herman had then left the city, and the stenographer was not authorized by appellant or by said Herman to send the papers to said McCool. (18) At the time of the execution and delivery of said check said Herman was in possession of said note for $500 and other papers connected with the loan, except a deed from said appellant to appellee. (19), (20) and (21) Said note, with other papers relating to the loan, had been delivered to said Herman by appellant on or about December 18, 1908, and

remained continuously in his possession until delivered to appellees. At the time appellant delivered said note and other papers to said Herman he asked for them, and stated to appellant that he wanted to examine them and to "look something up," and she then knew that said Herman had prepared said deed and note, examined the abstract of title, and had collected from appellees the $17.50 interest on July 1, 1908, which he afterwards paid to appellant, and knew that appellees, under the terms of the contract and loan, had the privilege of repaying the same on January 6, 1909. (22) Appellees had no knowledge or notice and no means of knowing of any revocation or limitation of the authority of said Herman to act for appellant as her agent and attorney, until after their payment to him of said note. (23) Appellees, during the transaction of all the matters connected with said loan, and at the time of the delivery of said check of $517.50 in payment of said note, believed that said Herman was the duly-authorized agent and attorney for appellant to negotiate said loan and to collect the same. (24) Said note was payable on the day following the time said McCool delivered to said Herman the check for $517.50. (25) Said check was indorsed by said Herman and was duly paid by the Mercantile National Bank, Evansville, Indiana, on January 7, 1909. (26) Said Herman never paid or accounted to appellant for any part of said sum of $517.50. (27) Appellees had no agreement, contract or understanding with appellant or with said Herman that they should pay for any services rendered by said Herman in collecting said loan or in accounting therefor to appellant, and said Herman was not the agent or attorney of appellees or either of them in that behalf. (28) That in making said loan to appellees and in collecting the same on January 5, 1909, said Herman acted as the agent of appellant and not as the agent of appellees. (29) Appellant made no inquiry of said Herman as to said papers in connection with said

loan, which she had delivered to him on December 18, 1908, until January 14, 1909, and after said Herman had disappeared from the city of Evansville, she made no inquiry or demand whatever from said McCool for the payment of said note until after she had learned of such disappearance of said Herman, and until after said McCool had written to her on or about January 23, 1909, demanding a reconveyance of said real estate, as in said contract provided. (30) Appellees in all things complied with the terms and conditions of the contract, and fully paid said note when due, and before the bringing of this suit. (31) That said written instrument, which on its face purports to be a deed, and said written instrument, which on its face is a bond and contract, were executed, delivered and accepted for the purpose of securing said loan. (32) That before the bringing of this suit, and after the repayment of said loan, appellant refused to execute and deliver to appellees a deed to the real estate described in their complaint, and no such deed was ever executed. As above stated, these facts are, in effect, conceded to be in accord with the evidence, except in so far as the court finds that in all the matters connected with said loan and its payment said Herman was not at any time acting as the agent of appellees, and finding 28 is especially relied on as having no evidence for its support.

It is insisted by appellant that if it can be said that the evidence tends to show that said Herman was acting for appellant at any time or in any capacity, that it at most only shows that he acted for her in the negotiation of the loan and the preparation of the papers evidencing and securing the same, and that appellees had no right to assume that he was acting for her in the collection of such loan.

In addition to the evidence which warranted the finding of said facts, in effect conceded by appellant to be correctly found, we have the following letter from Mr. Herman to Mr. McCool:

"Law office of
Louis J. Herman.
Rookery Bldg.
Telephone 324, 127 Fourth St.
Evansville, Indiana.

June 30, 1908.

Dr. Henry F. McCool,
       City.
Dear Sir:—

On my return to the office my stenographer informed me that you desired to pay off the entire loan held by Father Ewers and Mrs. Wagner. In looking over the papers I find the following clause in the Wagner loan:

'Said Henry F. McCool and Maggie N. McCool are hereby given the right to pay said Five Hundred ($500.00) Dollars on any annual anniversary of this contract.' I therefore see no way to accept this money until the end of the year, January 6th, 1909.

Upon examining the Ewers loan I find this clause:

'In the event that said Emery McCool and Anna McCool his wife, or their assigns or legal representatives desire to pay any portion of said Twenty-two Hundred ($2,200.00) Dollars prior to the end of said three (3) years, then they shall have the right to do so at any semi-annual interest bearing period upon the payment of all interest due at that time and the money so paid shall be credited on said principal of $2,200.00 represented by said notes.' The semi-annual interest bearing period referred to in this clause was June 16th, 1908, and as you made no tender on that date I cannot see my way clear to accept payment of this loan until the next interest bearing period, which will be December 16th, 1908.

I would therefore ask that you send me the six months interest due on the $500.00 and also the six months interest due on the $2,200.00.

                                     Very truly yours,
[Signed]                      Louis J. Herman."

Another letter, which tends strongly to show that appellant had depended wholly on either her attorney, Herman, or Father Ewers, who in turn evidently entrusted all of said matters to said attorney, is as follows:

"Princeton, Indiana, Jan. 23, 1909

Dr. H. McCool
  Evansville, Ind;
Dear Sir:—
  Miss Margaret Wagner of this city, has left with me for adjustment a claim against you for $500.00. It seems that Mr. Louis J. Herman had something to do with this claim.
  Will you please advise me the exact nature of the claim, as to whether same was secured and if so, how, and what has been done in the matter?
  An early reply will be appreciated.

Yours truly,

[Signed] Henry Kister."

Mr. McCool testified that Mr. Herman did not prepare the papers connected with the loan at his request; that he (McCool) "wanted to give a mortgage and he (Herman) said his client would not accept a mortgage." Appellant testified, in effect, that she entrusted the entire matter of making and collecting this loan and four others to Father Ewers, in whose home she lived and for whom she kept house. In fact, she repeatedly stated and insisted with reference to all of said loans inquired about that she entrusted them all, both their making and collecting, to Father Ewers, and that she had nothing to do with Mr. Herman except through Father Ewers; yet on cross-examination she, in effect, admitted that she knew that said Ewers employed Herman to make the loans and prepare the papers, and that Herman collected the interest and principal of such loans and gave the same to Father Ewers, who would then turn such collections over to her; that she, before said loans were paid, gave the notes and securities to said Ewers to be surrendered, and that Herman made the collections.

While the letter of Mr. Herman to appellees could not be taken as evidence establishing his agency, it is an important item of evidence strongly tending to show that he

2. had possession of the papers and was assuming to act in the matter of the collection of the note in question previous to the time of its payment.

Appellee Henry F. McCool testified that in December before he paid the note, at a time when he was in Mr. Herman's office on another matter, Mr. Herman told him he had the Wagner papers, and that he (the witness) saw them and saw a deed from appellant to appellees, signed by her, and that he then told Mr. Herman he was not then ready to take up that note; that it was not due until January, but for him to keep the papers, that he would take care of the note later.

Another witness—Mr. Davenport—an abstractor, testified that on one occasion when he went to see Mr. Herman about an abstract of another tract of land on which Father Ewers had a loan, and in which appellees were interested, Mr. Herman in that connection said: " 'I have a deed to turn over to Dr. McCool.' And he said 'here is one Miss Wagner had a loan on.' That I said, 'I don't know anything about that, the doctor [McCool] didn't tell me a thing about that.' He said, 'well I have a deed to that too, that is due in a few days and I suppose he wanted to pay all.' "

It is apparent from the evidence that this was a case of "misplaced confidence" both on the part of appellant and appellees. It is one of the numerous cases "where 3. one of two innocent persons must suffer because of the betrayal of a trust reposed in a third, and where the person most at fault must bear the loss." Story, Agency (9th ed.) §127. See, also, *Bamberger* v. *Geiser*, (1893), 24 Or. 203, 33 Pac. 609; *Kasson* v. *Noltner* (1878), 43 Wis. 646; *McLeod* v. *Despain* (1907), 49 Or. 536, 90 Pac. 492, 92 Pac. 1088, 124 Am. St. 1066, 1079.

"The maxim of natural justice here applies with its full force, that he, who, without intentional fraud, has enabled any person to do an act, which must be injurious to himself, or to another innocent party, shall himself suffer the injury rather than the innocent party, who has placed con-

fidence in him." Story, Agency (9th ed.) §127. The question in such cases seems to be, not "what was the authority actually given?" but, what was the party "in dealing with the agent justified in believing the authority to be?"

A rule which seems to be fundamental in the law of agency is stated in Mechem, Agency §§283, 284 as follows: It is well settled that "the authority of the agent must depend, so far as it involves the rights of innocent third persons, who have relied thereon, upon the *character* bestowed, and not upon the *instructions* given, or, in other words, the principal is bound to third persons who have relied thereon and in ignorance of any limitations or restrictions, by the *apparent* authority he has given to the agent, and not by the *actual* or *express* authority.  *  *  * A principal is responsible, either when he has given to an agent sufficient authority, or, when he justifies a party dealing with his agent in believing that he has given to this agent this authority."

In view of the principles of law controlling in the case, we feel there can be no doubt but that there is at least some evidence tending to support the decision of the court 1. on the question in dispute. In fact, if we were required to weigh the evidence we are not prepared to say that we would not reach the same conclusion reached by the trial court. A hardship must necessarily result to one party or the other by any decision that may be made in the case, and we are inclined to the belief that the trial court let it fall where, under the evidence and the law applicable thereto, it should fall. As further supporting this conclusion see, *Over* v. *Schiffling* (1885), 102 Ind. 191, 196, 26 N. E. 99; *Morehead* v. *Murray* (1869), 31 Ind. 418, 421; *Broadstreet* v. *McKamey* (1908), 41 Ind. App. 272, 273, 83 N. E. 773; *County of Macon* v. *Shores* (1877), 97 U. S. 272, 279, 24 L. Ed. 889; *Smith* v. *Kidd* (1877), 68 N. Y. 130, 141, 23 Am. Rep. 157; *Leo Austrian & Co.* v. *Springer*

(1892), 94 Mich. 343, 349, 350, 54 N. W. 50, 34 Am. St. 350.

Judgment affirmed.

Note.—Reported in 100 N. E. 395. See, also, under (1) 31 Cyc. 1667; (2) 31 Cyc. 1658; (3) 31 Cyc. 1331.