## SNYDER *v.* FRANK ET AL.

[No. 7,828.   Filed April 23, 1913.]

1. GIFTS.—*Gifts Inter Vivos.—Delivery.—Actions.*—Where a decedent executed deeds to his real estate and assigned notes, certificates of deposit and stock certificates, and placed them in separate envelopes addressed to his several children, and delivered the envelopes to another to be delivered to the children after his death, the children took by gift *inter vivos*, so that in an action on one of the notes, the plaintiff sued as his father's donee *inter vivos*, and not as a devisee or heir in his estate.   p. 305.

2. WITNESSES.—*Competency.—Nature of Action.—Action by Heirs.* —Under §522 Burns 1908, §499 R. S. 1881, providing that in suits by or against heirs, founded on a contract with the ancestor, to obtain title to or possession of property in the right of such ancestor, or to affect the same, neither party shall be a competent witness as to matters occurring before the ancestor's death, the defendant, in an action on a note received by plaintiff from his ancestor by gift *inter vivos*, was not disqualified to testify as to facts and circumstances connected with the execution and delivery of the note to the ancestor, since the action was not by or against heirs, and was not to obtain title to or possession of property in the right of the ancestor, or to affect the same in any manner. p. 306.

3. EVIDENCE.—*Res Gestae.—Declarations of Agent.*—The declarations of an agent while actually transacting the business which his principal authorized him to transact are admissible as a part of the *res gestae.* p. 309.

From Pike Circuit Court; *John L. Bretz,* Judge.

Action by Harley R. Snyder against Sol Frank and another. From a judgment for plaintiff, the plaintiff appeals. *Reversed.*

*J. W. Brumfield, J. W. Wilson* and *Pickens, Moores, Davidson & Pickens,* for appellant.

*John K. Chappell,* for appellee.

HOTTEL, J.—This was a suit by appellant on a $1,000 promissory note executed by appellees, August 1, 1908, and due August 1, 1909. The complaint was in one paragraph. Appellee Levi filed an answer of suretyship. Appellee Sol Frank filed a set-off in which he sought to recover on a $520 note of date April 28, 1900, executed by appellant Snyder to Gus Frank and endorsed ''G. Frank.'' To this set-off appellant replied in three paragraphs, the first paragraph being a general denial, the second a plea of payment, and the third a plea of accord and satisfaction by the sale and delivery to Gus Frank of 52 shares of stock of $100 each in the Alaska Gold Mining Company of Indiana, which stock was alleged to have been bought by the said Frank through said Snyder on April 28, 1900, at and for the price of $520 and assigned to said Frank on the books of said corporation on April 30, 1900. There was a trial by the court and a finding for the appellant Snyder on the note sued on by him in the sum of $1,254.95, principal, interest and attorneys' fees and a finding for the appellee Sol Frank on his set-off in the sum of $1,030.40, principal, interest and attorney's fees on which finding the court rendered judgment for Snyder in the sum of $224.55, being the excess of the sum found due on the note sued on in the complaint over that found due on the note filed with the set-off.

The appellant filed a motion for new trial which was overruled and exceptions saved. The ruling on this motion is the only error assigned. Eight grounds for a new trial are stated in the motion, but it is, in effect, conceded by the parties that the questions presented by the appeal all turn upon the disposition to be made of the sixth and seventh grounds of said motion. These grounds relate to the ad-

mission of evidence. During the progress of the trial the appellant offered Simeon J. Haines as a witness, and subject to appellees' objections, he was permitted to testify in substance that on April 28, 1900, Harley Snyder came to him to buy that stock for Gus Frank, referring to the mining stock for which the note mentioned in the set-off was alleged to have been given, and that at the time he made the transfer of such stock to Frank and while Snyder was paying him the money therefor, Snyder said to him, the witness: "Now I had to give my note for this money and I want to have the stock sent back to me and I will deliver it to Mr. Frank and pay my note. That is how I come to assign the stock to him. I had got my money and assigned the stock over and instructed the secretary to return the stock to Mr. Snyder." This witness on cross-examination testified as follows: "Q. Now, when was that Mr. Snyder, told you that he was the agent of Mr. Frank, to buy some stock that you owned? A. Well, I think it was on Friday before that he told me that Mr. Frank told him that he wanted some stock and wanted to know if I would sell some of my stock. I told him I would. Q. All you know about that is what Snyder told you himself? A. That is all."

The appellant offered himself as a witness, and, subject to appellees' objections, testified to a conversation between himself and Gus Frank, in reference to the purchase of stock in the Alaskan Gold Mining Company, substantially as follows: "Mr. Frank, remarked to me that he had five shares of stock in the Juallem Mine and he would not mind to have a block of stock in the mine I was associated with, provided he could get it cheap enough, and asked me to see what I could secure a block of it for him for. The next day I told him I could secure a block of stock from Mr. Haines, for him, for $10 a share. He said he would take it. This was on the 28th day of April, 1900. I saw Mr. Frank in the bank, an hour or two after this talk, and I told him that Mr. Haines wanted to dispose of 52 shares of his

stock. Mr. Frank then gave me the cash, $520.00 to pay for it. At the time he gave me this money, I requested him to write a receipt saying that I would sign it until I closed the deal for him. He took up this temporary note off the table and filled it out and said, 'sign this'. The body of this note is in the handwriting of Gus Frank. This note was given by me to him for the $520 I got of him and paid to Mr. Haines for the 52 shares of stock. I paid the same money I got from Mr. Frank to Mr. Haines the day I got it from Mr. Frank, and after that delivered the stock to Mr. Frank.'' After being requested to look at a book the witness testified that he delivered to Mr. Frank certificate No. 608 for 20 shares; that he delivered certificates 608, 609 and 610 on the 2d day of May, 1900; that at the time he delivered the stock he called for his note. ''Mr. Frank made search for the note through his safety box there in the bank and failed to find it and remarked that if he could find it he would hand it to me and if not he would give me a receipt against it. Two weeks later I went away. The stock was issued to Mr. Frank by the corporation Monday, the 30th. I delivered it to him May 2nd. I got the re-issue of stock I gave to Mr. Frank from Mr. Moore through the P. O. Mr. Frank never mentioned the note to me afterwards.'' A cross-examination of the witness developed the same facts more in detail.

The court after hearing this evidence of each of said witnesses, finally sustained the objection in each case and excluded it, to each of which rulings the appellant excepted, and · assigned the same as his sixth and seventh grounds respectively for a new trial, and is now insisting that such evidence was improperly excluded.

Gus Frank, the original payee of the $520 note involved in the set-off died December 16, 1909. It is claimed by Sol Frank (hereafter referred to as appellee) that by §522 Burns 1908, §499 R. S. 1881, the appellant was incompetent to testify to any matter occurring prior to the death of Gus Frank,

and that for this reason the evidence of appellant Snyder was properly excluded, and that, with his evidence out, there was no evidence showing that he was the agent of Gus Frank in buying the stock for which the $520 note was claimed to have been given; that any statements which he may have made to the witness Haines were not competent for such purpose for the reason that the declarations of an agent are not competent evidence to establish the fact of the agency. It is apparent therefore, that the correctness of each ruling depends on whether or not, by §522 Burns 1908, §499 R. S. 1881, appellant is rendered incompetent to testify to any matter that occurred prior to the death of Gus Frank. This section is as follows: "In all suits by or against heirs or devisees, founded on a contract with or demand against the ancestor, to obtain title to or possession of property, real or personal, of, or in right of, such ancestor, or to affect the same in any manner, neither party to such suit shall be a competent witness as to any matter which occurred prior to the death of the ancestor."

It is conceded in appellees' brief that Gus Frank before his death, viz., on June 16, 1909, made disposition of his property, real and personal, among his four children.

1. He executed deeds to his real estate and assigned notes, certificates of deposit, certificates of stock in various banks, and other corporations and placed these in separate envelopes addressed to each of his children, and "delivered the four envelopes to Leslie Lamb, cashier of the First National Bank of Petersburgh, Indiana, to be delivered to his children after his death." These envelopes were delivered by Mr. Lamb after the death of Gus Frank and in the envelope delivered to appellee was found the $520 note involved herein, endorsed as above set out. Some mention is made in appellee's brief of a will being made by Gus Frank on the same day in which a like disposition of his property was made. The evidence, however, dis-

closes that appellee claims the $520 note in suit by reason of his father having endorsed it and placed it in the envelope addressed to him and delivered to said Lamb as above set out. In fact it was conceded in the oral argument that the will mentioned was not introduced in evidence and that the appellee's claim to the $520 note is based on the division of the father's property among the heirs made by him in his lifetime as above indicated. Under this claim of appellee and the evidence given in its support, the note in suit was a gift *inter vivos* by the father to the son. *Martin* v. *McCullough* (1894), 136 Ind. 331, 338, 34 N. E. 219; *Wyble* v. *McPheters* (1876), 52 Ind. 393; *Jacobs* v. *Jolley* (1902), 29 Ind. App. 25, 33, 62 N. E. 1028; *Crawfordsville Trust Co.* v. *Ramsey* (1912), 178 Ind. 258, 100 N. E. 1049. It follows, we think, under these holdings, that appellee sued herein as his father's donee *inter vivos,* and not as a devisee or heir in his estate.

In the case of *Creamer* v. *Sirp* (1883), 91 Ind. 366, the section of statute here involved was under consideration and the Supreme Court there said (p. 368) : ''While this is a claim growing out of a contract with the ancestor, it is not claimed as heir or devisee, but by grant in the contract, and it does not in any manner affect the ancestor's estate, or any property, real or personal, formerly owned by him. The property had all passed into the hands of the defendant in the lifetime of the ancestor, and no claim whatever is set up in relation to any part of said property.'' In the case of *Peacock* v. *Albin* (1872), 39 Ind. 25, the Supreme Court, in discussing the same section of statute at page 29 said: ''We are clearly of the opinion that the word heirs as used in the above proviso was intended to include all persons, whether they took the estate *under the law or by virtue of a will,* in all cases where the *devisee or legatee* would have taken any portion of the estate under the statute of descents. * * * If the purpose was to exclude parties as witnesses in all cases, it

seems to us that the legislature might have expressed such purpose in a much briefer and far more intelligible manner.'' (Our italics.) Henry, Probate Law (2d ed.) §§489, 490 says: §489. ''* * * And the word heirs, as used in this statute, is intended to include all persons who take the estate of the decedent *under the law, or by virtue of a will. Under this statute one element which creates the right of action is the fact that the decedent held title to the property involved, at the time of his death.* * * *'' §490. ''The word 'heirs' as used in this statute includes all persons who take any portion of the decedent's estate by descent, or who would so take, if they did not take by virtue of a will. * * * '' (Our italics.) To the same effect see: *Hiatt* v. *McColley* (1908), 171 Ind. 91, 85 N. E. 772; *Cincinnati, etc., R. Co.* v. *Cregor* (1898), 150 Ind. 625, 629, 50 N. E. 760; *Michigan Trust Co.* v. *Probasco* (1902), 29 Ind. App. 109, 63 N. E. 255; *Hankey* v. *Downey* (1894), 10 Ind. App. 500, 38 N. E. 220; *Waltz* v. *Waltz* (1882), 84 Ind. 403, 409; *Sullivan* v. *Sullivan* (1893), 6 Ind. App. 65, 69, 32 N. E. 1132; *Sloan* v. *Sloan* (1898), 21 Ind. App. 315, 317, 52 N. E. 413; Henry, Probate Law (2d ed.) §§489-491. It appears from the language used in several of the decisions and especially from §490, Henry, Probate Law, and *Waltz* v. *Waltz, supra,* that appellant is not rendered incompetent by the section of the statute in question, not only because the suit is not by or against heirs or devisees but because the subject-matter of the suit is not within the provisions of the section. In the case of *Waltz* v. *Waltz, supra,* the Supreme Court at page 409 said: ''The act of March 15, 1879, renders such witnesses in such cause incompetent. This is not, however, such a suit. This is not a *suit by heirs,* or *against heirs,* upon a contract made with an ancestor *to obtain title to or possession of property belonging to such ancestor.* The persons who bring the suit *are heirs, but they do not bring it as heirs, nor do they seek to obtain title to or possession of any property of the ancestor.* They

seek to obtain a judgment against their debtor, and to have the same declared a lien, upon land conveyed to him by their ancestor; such land is not the property of the ancestor, nor does the claim for the purchase money belong to his estate. There was, therefore, no error in allowing these witnesses to testify.'' (Our italics.)   Again this court in the case of *Sullivan* v. *Sullivan, supra,* at page 69 said: ''The witness was not incompetent by reason of section 498, nor was he so under section 499, for that section contemplates only suits between heirs or by or against such, founded on a demand against the ancestor to obtain title to or possession of his property, or to affect it in any manner.   This was not such a suit.   See Henry, Probate Law 309, *et seq.,* and 2 Works' Practice §1219, where the questions are discussed and the authorities cited.''   Henry in his Probate Law (2d ed.) §491 says: ''* * *   This section was not intended to apply to actions, the object of which was to recover a judgment for money.   It embraces actions to obtain the possession of land; for specific performance of contract with the ancestor in reference to land; to quiet the title to lands, or to remove a cloud from such title; and actions to obtain the possession or try the title to articles of personal property. * * * ''   Other decisions indicate the same construction.   If this construction be correct, it necessarily follows that appellant's evidence was improperly excluded both for the reason that this suit was not by or against heirs and for the further reason that it was not a suit to *obtain title to or possession of property,* real or personal, of, or in the right of such ancestor or to affect the same in any manner.

It should be remarked however, in this connection, that there is language used in some of the cases that would at least indicate a different construction of this section, in so far as the subject-matter of the action has to do with the question involved.   There is language in some of the cases indicating that if the action be by or against heirs or de-

visees *either* "founded on a contract with or demand against the ancestor [or] to obtain title to or possession of property", etc., that neither party shall be competent, etc.  It is not necessary for the purposes of this case that we attempt to reconcile the apparent conflict in the language used in these cases, because under any and all of them the appellant was a competent witness, and error resulted from the exclusion of his evidence.  We may remark, however, that the language of the statute and its punctuation indicate that the legislature intended the construction placed on it by the cases cited and quoted from, *supra.*  The intention of such a construction becomes more manifest when, as suggested by Mr. Henry, the section is read in connection with the preceding §521 Burns 1908, §498 R. S. 1881.    See, Henry, Probate Law (2d ed.) §491.

3.    It follows also that the evidence of the witness Haines in so far as it related to what was said and done by Snyder at the time of the transfer and payment for the stock mentioned in the evidence of said witness, was improperly excluded.  With the evidence of appellant admitted, his authority to buy and pay for the stock for and as the agent of Gus Frank is shown, and it follows, under the law, that his declarations and statements while actually transacting the business which his principal authorized him to transact were admissible as part of the *res gestae.  United States Express Co.* v. *Rawson* (1886), 106 Ind. 215, 218, 6 N. E. 337; 16 Cyc. 1006, 1007, 1008; *Cleveland, etc., R. Co.* v. *Closser* (1890), 126 Ind. 348, 365, 26 N. E. 159, 22 Am. St. 593, 9 L. R. A. 754; *Willison* v. *McKain* (1895), 12 Ind. App. 78, 83, 39 N. E. 886; *Fields* v. *Campbell* (1905), 164 Ind. 389, 396, 72 N. E. 260, 108 Am. St. 301.

For the error in excluding the evidence indicated herein, the judgment is reversed with instructions to the trial court to grant a new trial and for further proceedings consistent with this opinion.

NOTE.—Reported in 101 N. E. 684. See, also, under (1) 20 Cyc. 1198, 1209; (2) 40 Cyc. 2263, 2304; (3) 16 Cyc. 1003. As to conveyances to take effect after grantor's death, see note to *Wilson* v. *Carrico* (Ind.), 49 Am. St. 219. As to what is included in the *res gestae*, see 95 Am. Dec. 51; 16 Am. St. 407. As to declarations that form part of the *res gestae*, see 58 Am. Rep. 184.