EDWARD MALO *v*. BOWLERS COUNTRY CLUB, INC.

[No. 571A93. Filed June 16, 1972.]

*George P. Roberts,* of South Bend, for appellant.

*James H. Pankow,* of South Bend, for appellee.

SULLIVAN, J.—The action was brought below by plaintiff-appellant (Malo) against defendant-appellee (Bowlers) to foreclose a mechanics lien. The lien was filed after Bowlers

allegedly failed to pay Malo for architectural services rendered in connection with the erection of a bowling, recreation and restaurant facility. Trial was had to the court without a jury. On December 24, 1970, judgment was entered in favor of the defendant Bowlers. Malo timely filed his motion to correct errors, which on March 2, 1971 was overruled.

In substance, appellant-Malo has presented two issues for resolution:

(1) Whether the evidence established as a matter of law Malo's right to recover a fee based upon 70% of the estimated construction cost.[1]

(2) Whether the trial court properly excluded evidence of volunteer, i.e., unpaid, work done subsequent to the completion of the contract covering the erection of the building structure sought to be adduced by plaintiff during cross-examination of defendant's witness.

The appeal here is by the plaintiff from a negative judgment. The burden is therefore upon appellant to show that the decision of the trial court is contrary to law. Pokraka v. Lummus Co. (1951), 230 Ind. 523, 104 N. E. 2d 669. Senst v. Bradley (1971), 150 Ind. App. 113, 275 N. E. 2d 573. Stated differently, it is not necessary that there be evidence to sustain a negative judgment. The standard to be applied in appellate review of a negative judgment was stated in Senst, supra:

"It is only where the evidence is without conflict and leads to only one conclusion and the Trial Court reached a contrary conclusion that the decision will be disturbed as contrary to law, i.e., that is where it affirmatively appears that reasonable men could not have arrived at the same judgment or conclusion. In this context, this Court, as a reviewing Court, will consider only the evidence most favorable to the decision of the Trial Court." (Citations omitted) 275 N. E. 2d 576.

---

1. The Motion to Correct Errors alleges that the evidence establishes as a matter of law that appellant is entitled to recover 80% of his fee while appellant's argument attempts to establish 70% as recoverable. The discrepancy, an apparent typographical error, is not critical, however, as neither figure is a determinant factor of the result reached herein.

## APPELLANT HAS NOT SHOWN HIS RIGHT TO RECOVERY AS A MATTER OF LAW

Article 6 of the contract between the parties expressly states that project construction cost which is the primary factor in computing the architect's fee would be determined, if possible, by the "lowest acceptable bona fide Contractor's proposal received for any or all portions of the project." Article 6 reads in part as follows:

"6.1 Project Construction as herein referred to means the total cost of all work designed or specified by the Architect, but does not include any payments made to the Architect or consultants.

6.2 Project Construction Cost shall be based upon one of the following sources *with precedence in the order listed:*

6.2.1 Lowest acceptable bona fide Contractor's proposal received for any or all portions of the Project.

6.2.2 Semi-Detailed or Detailed Estimate of Project Construction Cost as defined in paragraph 6.4 below.

6.2.3 The Architect's latest Statement of Probable Project Construction Cost based on current area, volume or other unit costs.

\* \* \*

6.4 If a fixed limit of Project Construction Cost is stated herein, or if otherwise authorized by the Owner, estimates of the Probable Project Construction Cost prepared in semi-detailed or detailed form by an experienced estimator will be secured by the Architect during the Design Development or Construction Document Phase." (Emphasis supplied.)

Bowlers argues that actual cost of work completed equals something "in the neighborhood of $43,000." As a result of detailed examination of the record we have been able to extract costs which approximate that amount:

| | |
|---|---:|
| Concord Builders | $34,183.00 |
| (less $1189 for galvanized roof in lieu of Butler-Cote finish) | $32,994.00 |
| N & S Concrete Construction | $ 5,525.00 |
| Valley Concrete | 1,466.86 |
| Nelson Engineering | 1,081.34 |
| Total actual cost | $41,081.34 |

The contract between Malo and Bowlers provided under Article 8 that payments to the architect were to be made in "proportion to services performed" and in accordance with the following percentages *at the completion of the various enumerated phases of the project:*

| | |
|---|---|
| Execution of the Agreement | 5% |
| Schematic Design Phase | 15% |
| Design Development Phase | 35% |
| Construction Documents Phase | 75% |
| Receipt of Bids | 80% |
| Construction Phase | 100% |

In connection therewith, Article 10 of the contract clearly states that either party has the right to terminate the contract and provides that in such event *due to the fault of other than the architect,* the architect shall be paid for services *to termination date.*[2] Malo argues that his services were terminated during the construction phase of the contract and that a reading of Articles 8 and 10 *in pari materia* supports his claim for 85% of his fee less 15% representing mechanical services not performed. Applying Malo's basic fee rate of $4\frac{1}{2}\%$ of the project construction cost, plus an additional 2% for the several separate project contracts let,[3] to a total actual cost of $41,081.34 results in an allowable contract fee of $1869.20 if we were to assume as stated by Malo that he completed 70% of his work.

Bowlers argues, however, that the applicable percentage due Malo is limited to the last phase *completed* by him, *i.e.,* the "design development phase" representing 35% of completed architectural work. The record sustains Bowlers' con-

---

2. "ARTICLE 10. TERMINATION OF AGREEMENT. This agreement may be terminated by either party upon seven day's written notice should the other party fail substantially to perform in accordance with its terms through no fault of the other. In the event of termination, due to the fault of others than the Architect, the Architect shall be paid for services performed to termination date, including reimbursements then due, plus terminal expense."

3. The Malo-Bowlers contract provided an addition of 2% to the basic architect's fee if the project were let under more than 1 but less than 6 separate contracts.

tention. The certificate of compliance contained a notation that certain plans required at the "construction documents phase" were to follow; however, there is a dispute whether those plans were ever submitted. The trial court quite obviously found from the conflicting evidence that Malo had failed to prove completion of 70% of the work. By reason of the foregoing, we are unable to hold that the decision of the trial court is contrary to law.

## TRIAL COURT DID NOT ABUSE ITS DISCRETION BY REFUSING CROSS-EXAMINATION OF WITNESS INVOLVING WORK PERFORMED SUBSEQUENT TO MALO'S TERMINATION

Notwithstanding the clear language of Article 6 of the contract concerning the preferred basis upon which Project Construction Cost is computed, Malo contends that his fee is determinable upon his estimate of the probable construction cost, and argues that he was precluded from establishing the reasonableness of his estimated construction cost by the trial court's refusal to allow him to adequately cross-examine Kaniouski, President of Bowlers. Malo asserts that the trial court thus made it impossible for him to determine what work was performed by volunteer labor and to substantiate his estimate by reference to actual contracts let.

While volunteer labor may be a proper consideration in computing total Project Construction Cost and might thus be taken into account in computation of the architectural fee,[4] we nevertheless conclude that a trial court, as here done, may properly refuse to admit evidence, appropriately a subject for a party's case in chief, when that party attempts to introduce such evidence for the first time during the cross-examination of his adversary's witness. Rule TR. 43(G).

4. ARTICLE 6.3. "When labor or material is furnished by the Owner, the Project Construction Cost shall include such labor and material at current market cost."

For the reasons hereinbefore stated, the decision of the trial court is affirmed.

White, P.J. and Buchanan, J., concur.

NOTE.—Reported in 283 N. E. 2d 806.