KODY ENGINEERING COMPANY, INC.; THE INDIANA NATIONAL BANK, EXECUTOR OF THE ESTATE OF MIKLOS SPERLING, DECEASED v. FOX AND FOX INSURANCE AGENCY, INC.

[No. 1171A242. Filed November 15, 1973. Rehearing denied January 15, 1974.]

*James C. Clark, Clark & Clark,* of Indianapolis, for appellant.

*Robert H. Orbison, Baker and Orbison,* of Indianapolis, for appellee.

## CASE SUMMARY

BUCHANAN, P.J. — Defendant-Appellant Miklos Sperling (Sperling)[1] appeals from a judgment entered by the trial court

1. Sperling died subsequent to filing this appeal and The Indiana National Bank as executor of his estate has been substituted as a party in his stead.

in favor of Plaintiff-Appellee Fox and Fox Insurance Agency, Inc. (Fox) on its claim for money paid for the benefit of Sperling. Sperling claims that the evidence was insufficient to sustain the judgment on the basis of either contract or quasi-contract.

We reverse.

## FACTS

The facts and evidence most favorable to the judgment of the trial court are:

On August 1, 1967, Sperling sold his business, Merz Engineering Company (Merz), and retired.

Some months later, in 1968, Sperling loaned $50,000.00 to Kody Engineering Co. (Kody), a corporation formed by three of Sperling's ex-employees at Merz. In exchange for this loan, Sperling acquired a security interest in Kody's equipment and accounts receivable. He had no equity interest in Kody nor was he an officer or director in that corporation.

Another of Sperling's ex-employees, Richard Myer (Myer), had served as comptroller and office manager at Merz. When Merz was sold, Myer was retained by the new owners. Also, Myer was employed by Kody as an accountant on a part-time basis.

In July of 1968, after Sperling had made the loan to Kody, Myer arranged a meeting between the principals in Kody and Fox for the purpose of negotiating an insurance program protecting Kody's property. Myer had previously "referred" other insurance business to Fox.

Myer attended this gathering between Kody and Fox and, without Sperling's knowledge or consent, suggested to Fox that Sperling's security interest also be protected by the insurance. This was done. At this meeting no express undertaking to guarantee payment of the insurance premiums was made by Myer on behalf of Sperling. Fox was aware that

Myer was not employed by Sperling when Myer suggested that Sperling be named on the policies.

Pursuant to these negotiations, Fox issued insurance policies protecting against various risks, including the machinery and equipment subject to Sperling's security interest. On the face of these policies, Sperling was named as mortgagee under a loss payable clause.

Evidence at trial established that Sperling and Fox maintained a separate business relationship on several unrelated insurance matters both before and during the period of insurance dealings between Fox and Kody.

Neither Fox nor Myer informed Sperling that he had been named as mortgagee on the policies nor sent him copies of the policies after they had been issued. For approximately eighteen months after the policies were issued, Fox advanced the premiums and in turn billed Kody. Fox never billed Sperling.

Kody was experiencing financial difficulties during this period of time and only made nominal payments on the premium indebtedness to Fox.

Sperling did become aware of the existence of these policies as well as the mounting premium debt owed to Fox by Kody, however, there was no evidence that he was aware that his security interest was covered by them.

Fox's president, David Fox, became concerned over this growing unpaid balance and conversed with Sperling on the subject of Kody's financial prospects. At trial, Fox gave the following account of this conversation:

"A. . . . From time to time he kept me abreast of what was going on in Kody and he [Sperling] was most disappointed, I know, in the performance of them and was most interested because he had a financial interest, as I did, and he lead me to believe that I would be protected, as he has always done in all the ventures that I have insured for him. . . .

Q. And, as a matter of fact, did Mr. Sperling assure you that you would get your money?
A. He did not put it down in writing but he assured me that I didn't have anything to worry about."

No evidence was presented which would indicate that Sperling was aware he had been named on the policies when this conversation took place, or thereafter.

No loss claims were ever paid to Kody or Sperling under these policies.

Shortly after the above-described conversation, Kody became insolvent, leaving $4,660.16 indebtedness to Fox for the premiums.

On March 9, 1970, Fox filed suit against Kody naming Sperling as co-defendant. Trial was to the court on May 20, 1971, following which judgment was rendered against Sperling for the amount of the premiums.[2] Sperling filed his Motion to Correct Errors, alleging that the judgment was contrary to law and not supported by sufficient evidence, which was overruled, and Sperling appeals.

## ISSUE

The questions raised may be treated as constituting one issue:

Was evidence presented from which the trial court could reasonably infer that insurance protection was rendered at Sperling's request under circumstances requiring imposition of a quasi-contractual duty on Sperling's part to pay the insurance premiums?

Sperling contends that the evidence failed to establish his liability for payment under any contractual theory, including quasi-contract. Specifically, Sperling argues that no evidence was presented which could show either an express or implied request by him to be named on the policies, or a promise to pay the premium debt to Fox.

2. Kody's liability was not questioned by the parties and is therefore not an issue in this appeal.

Fox apparently concedes that the evidenec was insufficient to warrant a finding that a contract based upon a "meeting of the minds" was ever consummated. In its brief Fox states:

"We are not dealing with that factual situation here as appellee did not recover in the lower court on the basis of an express contract but upon the basis of a quasi contract. . . ."

Fox does rely on the facts and reasonable inferences to be drawn from the evidence as giving rise to the imposition of a promise by Sperling to pay for the premiums separate from the intentions of the parties. Specifically he points to the elements necessary for quasi-contract recovery, *i.e.*, (1) a benefit (insurance coverage) was rendered to Sperling, (2) at his implied request, (3) under circumstances in which equity should demand that Sperling compensate Fox therefor in order to prevent unjust enrichment.

He urges that the evidence was sufficient to find that Myer acted with apparent authority as Sperling's agent when he suggested to Fox that Sperling's interest be protected under the insurance; thereby imputing such a request to Sperling as a principal.

His argument also includes an "anchor to windward." Even if Myer were found to have acted without such apparent authority, he says, the trial court could reasonably infer from the testimony regarding the subsequent conversation between Sperling and Fox that Sperling *ratified* the request for coverage when he verbally assured Fox that he would be paid.

## DECISION

CONCLUSION—It is our opinion that the evidence was insufficient to establish that Sperling impliedly requested insurance protection so as to impose a quasi-contractual duty upon him to pay the premiums.

Our consideration of this appeal must be governed by certain timeworn but honored rules of appellate procedure:

*"It is only where the evidence is without conflict and leads to only one conclusion and the Trial Court reached a contrary conclusion that the decision will be disturbed as contrary to law i.e.* that is where it affirmatively appears that reasonable men could not have arrived at the same judgment or conclusion. In this context, this Court, as a reviewing Court, will consider only the evidence most favorable to the decision of the trial court." (Emphasis supplied.) *Senst* v. *Bradley* (1971), 150 Ind. App. 113, 275 N.E.2d 573, at 576. *See also, Minniear* v. *Estate of Metcalf* (1972), 153 Ind. App. 213, 286 N.E.2d 700; *Malo* v. *Bowlers Country Club* (1972), 152 Ind. App. 413, 283 N.E.2d 806; *Metz* v. *Madison* (1971), 149 Ind. App. 157, 271 N.E.2d 197. Also: " 'It is well settled that an appellate tribunal will not weigh the evidence, but when the record discloses a failure of the evidence on any material question, it is the duty of this court to reverse the judgment.' " *Legler* v. *Legler* (1971), 149 Ind. App. 447, 273 N.E.2d 303 (note 2 at 305 citing *Moellering* v. *Kayser* (1887), 110 Ind. 533, 11 N.E. 604. *See also, MacCollum* v. *American Fletcher National Bank & Trust Co.* (1972), 153 Ind. App. 282, 287 N.E.2d 265.

So our quest is to determine if there was an absence of evidence as to an essential element necessary to support the trial court's judgment.

As the parties apparently agree,[3] there was insufficient evidence to justify a finding that an express or implied contract was entered into between Sperling and Fox, the judgment is supportable only on the theory of a quasi or constructive contract.

A guide to the nature of such an obligation is provided by *Board of Commissioners* v. *Greensburg Times* (1938), 215 Ind. 471, 480, 19 N.E.2d 459, 462:

"Quasi contracts are a class of obligations which are imposed or created by law without regard to the assent of the party bound. They rest solely on a legal fiction and are not contracts at all in the true sense, for there is no agreement. They arise from law or natural equity and are clothed with

---

3. Even if they did not agree, no express or implied contract can arise if one of the contracting parties lacks knowledge of the subject matter of the agreement. *Franklin* v. *Walker* (D.C. Ind. 1955), 129 F.Supp. 748.

the semblance of contracts merely for the purposes of the remedy. Among the instances out of which quasi or constructive contracts may arise are those *where there is a legal duty to pay, independent of any contract relationship, coupled with a consideration moving to the party sought to be charged."* (Emphasis supplied.) See also, *Clark* v. *Peoples Saving and Loan Association of DeKalb County* (1943), 221 Ind. 168, 46 N.E.2d 681; *Dyer Construction Co.* v. *Ellas Construction Co.* (1972), 153 Ind. App. 304, 287 N.E.2d 262.

To recover in quasi-contract, the party seeking recovery must demonstrate a benefit rendered to the other party *at the express or implied request of such other party.* Thus, restitution will usually be denied if the benefit has been officiously thrust upon the recipient. *See, Board of Commissioners* v. *Greensburg Times, supra* (on rehearing at 20 N.E.2d 647) ; 66 Am. Jr. 2d, *Restitution and Implied Contracts,* §§ 4 and 5.

Long ago Indiana adhered to the principle that under circumstances akin to the case at bar there must be a request if restitution is sought:

"To sustain a count of money paid, laid out, and expended, there must have been a payment of money by the plaintiff *to a third party, at the request of the defendant,* express or implied, on a promise, express or implied, to repay the amount." (Original emphasis as to "to a third party" only.) *Conklin* v. *Smith* (1852), 3 Ind. 284. *See also,* Shirts v. Irons (1867), 28 Ind. 458.

Our next step, then, is to examine the evidence for a request. There is none based either on apparent authority of Myer acting as Sperling's agent or by any subsequent ratification.

Considering first if there was a request by Sperling through Myer as his agent acting with apparent authority. In order for Myer to have acted with apparent authority he must have been cloaked with the appearance of authority to act as Sperling's agent by some act of his

principal. *The State Life Insurance Co.* v. *Thiel* (1939), 107 Ind. App. 75, 87, 20 N.E.2d 693, illustrates this principle:

> "Before there can be ostensible [apparent] authority possessed by an agent sufficient to bind his principal, there must be an appearance of authority *caused by the principal,* and the agent must have acted within the scope of such authority." (Emphasis supplied.) *See also, Farm Bureau Mutual Insurance Co.* v. *Coffin* (1962), 136 Ind. App. 12, 186 N.E.2d 180; *Over* v. *Schiffling* (1885), 102 Ind. 191, 26 N.E. 91; *Wagner* v. *McCool* (1913), 52 Ind. App. 124, 100 N.E. 395.

No evidence was presented which could give rise to a reasonable inference that Sperling in any manner caused Myer to appear as though he had authority to act on Sperling's behalf. Sperling was unaware that Myer intended to request or did request insurance coverage for his security interest. At the time of the insurance negotiations and prior thereto, Myer was employed by Kody, *not* Sperling, which fact Fox well knew. Furthermore, it is undisputed that Sperling never spoke to Fox about the insurance until long after the insurance program had been in effect.

The conclusion is inescapable that Myer acted gratuitously in requesting that Sperling's interest be protected and that Sperling exhibited no conduct which could have led Fox reasonably to believe that Sperling was acting through Myer as his agent when the negotiations took place. So no evidence exists to support a request for the benefit (insurance coverage) on the basis of a request for that benefit by Sperling acting through an agent with apparent authority.

Fox's contention that Sperling subsequently ratified Myer's request is likewise unsupported by the evidence.

Once again, a statement of the rule dispels Fox's argument in this regard:

> "If the principal *knowingly* appropriates to himself the fruits of his agent's unauthorized act he can not be heard

to declare that it was done without his authority. Neither can he take the benefits and reject the burdens: he must as a rule accept or reject the whole contract. But here, as in other cases, *it is indispensable that the principal should have had full knowledge of the material facts, or that he should have intentionally accepted the benefits without inquiry.* Otherwise the receipt and retention of the benefits of the unauthorized act can not be deemed a ratification of it." (Emphasis supplied.) *Willison* v. *McKain* (1894), 12 Ind. App. 78, 83, 39 N.E. 886. *See also, Hutter* v. *Weiss* (1961), 132 Ind. App. 244, 177 N.E.2d 339; *Neu* v. *Woods* (1937), 103 Ind. App. 342, 7 N.E.2d 531; I.L.E., *Agency,* § 122.

Neither the conversation which took place between the parties (as related by Fox) after the insurance policies were issued, nor any other fact in evidence discloses knowledgeable retention of benefits by Sperling. The evidence is undisputed that while Sperling may have been aware that insurance policies had been taken out, there is no evidence that he was aware of the existence of the insurance coverage of his security interest at any time prior to the commencement of this lawsuit by Fox.

The conversation between Fox and Sperling in which Fox received assurance that he "didn't have anything to worry about" carries with it no reasonable inference that Sperling had knowledge of the insurance coverage of his security interest.

Assuming, without deciding, that the insurance protection constituted a benefit which Sperling retained (which is questionable given the conditional nature of the insurance coverage), the record is barren of any evidence he did so knowingly. There can be no ratification under such circumstances. *Willison* v. *McKain, supra.*

Unfortunate though it may be that Fox cultivated business with Kody only to reap a harvest of uncollectible debt, he may not fertilize this unproductive soil with Equity to impose liability upon one who unwittingly and conditionally bene-

fited in the process. *See,* 66 Am. Jur. 2d, *Restitution and Implied Contracts,* § 16 at 960.

The judgment of the trial court is fatally defective in that there was insufficient evidence to impose a quasi-contractual duty on Sperling to pay the insurance premiums in question. It is therefore reversed and the cause is remanded for further proceedings consistent with the views herein expressed.

White and Sullivan, JJ., concur.

NOTE.—Reported at 303 N.E.2d 307.