ARDIS C. MELLOH *v.* MARY A. GLADIS.

[No. 474S84.   Filed April 16, 1974.   Petition for rehearing dismissed May 21, 1974.]

*Melville E. Watson,* of Greenfield, *Michael B. Reddington,* of Indianapolis, for appellant.

*Daniel J. Harrigan,* Bayliff, *Harrigan, Cord & Maugans,* of Kokomo, for appellee.

HUNTER, J.—This cause arises upon petition to transfer and involves a dispute between a brother and sister as to whether they are to share equally certain real property originally owned by their deceased mother. The facts are undisputed that the decedent intended that the siblings equally share her personal property. The controversy centers on a deed, absolute on its face, which was executed during deceased's lifetime, and purported to convey certain real property to the defendant. The plaintiff alleged in her complaint the following (as taken from the Court of Appeals opinion) :

". . . that she and Ardis were siblings and that their mother was Cecilia I. Melloh, who died on March 16, 1964. Cecilia Melloh was predeceased by her husband, the father of Mary and Ardis, who died after a protracted illness and left all of his estate to Cecilia. Prior to her death Cecilia discovered that she had terminal cancer, and fearing a period of increasing disablement concluding in death, she had the family home and a savings account put in joint name with Ardis and his wife. Mary alleged that this was done so Ardis could administer the family affairs during Cecilia's decline and that Ardis promised Cecilia that upon her death he would pay to Mary an amount equal to one-half the value of the property entrusted to his care after the expenses of Cecilia's illness and burial were deducted.

"Other significant allegations of Mary's second amended complaint are as follows: *that Cecilia was deceived by Ardis' promise that he would pay half the value of the property to his sister when, in fact, Ardis had then formed the intent to keep all of the property for his own use and benefit; that since Cecilia's death Ardis has repeatedly*

*acknowledged his financial obligation under the agreement with his mother to Mary; that the first time Ardis clearly repudiated his agreement with his mother was on November 26, 1969, when his deposition was taken;* that the family house has been sold by Ardis for an amount unknown to Mary; *that by operation of law Ardis became a trustee for the performance of his promise to his mother and Mary became the beneficiary of a constructive trust;* that Mary has demanded that Ardis pay to her what is owed and said demand has been refused; and that Mary demands judgment against Ardis in the amount of $14,559.95 plus interests and costs." (emphasis added)

At the conclusion of all the evidence, the trial court rendered its findings of fact and conclusions of law, which, for the most part, corresponded to the allegations of Mary's complaint. However, although Mary alleged that she was the beneficiary of a *constructive* trust, the trial court found that she was the beneficiary of a *resulting trust* and entered judgment for her in the amount of $14,410.38.

Ardis appealed and the Court of Appeals, First District, reversed and remanded. (301 N. E. 2d 659)

The Court of Appeals placed great weight on the conflicting nature of the testimony relating to a meeting between the mother, Mary, Ardis, and the family attorney. At the meeting, the mother, aware of her illness, deeded the house to Ardis and his wife for one dollar in consideration. The deed was absolute on its face. According to Ardis and the attorney, the mother never made any statement nor expressed any intention that Ardis share the value of the house with Mary. Mary, however, testified that the mother stated at the meeting, as well as on prior occasions, that Mary and Ardis were to share everything, including the house, equally and that the house was deeded to Ardis with the agreement that Ardis would owe Mary half the value of it. It was further agreed that Ardis would take care of the family's financial matters while Mary would live with and care for the mother until her death.

Mary has filed a petition to transfer with this Court. She

first contends that the Court of Appeals erred by applying IC 1971, 30-1-9-6 through 30-1-9-8 to this case. She ■ argues that these sections do not apply to the facts of this case because their application is limited to "trusts concerning lands" whereas her interest, which allegedly is an amount equal to one-half the value of the house, is personal property. Although this contention is probably meritorious, Mary offers no argument in support thereof other than a mere assertion of the proposition. This contention, therefore, will not be treated and is deemed waived. AP. 8.3(A)(7).

Mary further contends that the Court of Appeals contravened a ruling precedent of this Court found in *Friend* v. *Lafayette Joint Stock Land Bank of Lafayette* (1938), 213 Ind. 408, 13 N. E. 2d 213, which is that if there is any evidence which fairly tends to establish the facts found, the findings will not be disturbed. Here, the Court of Appeals stated its holding as follows:

"We are of the opinion that the testimony relied upon by the trial court to find a resulting trust does not, as a matter of law, possess the qualities of clearness, fullness and persuasiveness required to substantiate Mary's claim as a beneficiary. As indicated in the summary of evidence contained herein, the testimony was sharply conflicting to a point where a resulting trust theory was not exclusively compatible with some other result.

"Having held that under the facts of this case that no resulting trust exists, the cause is reversed and remanded for further action not inconsistent with this opinion." 301 N. E. 2d at 662.

To reach this result the Court of Appeals first noted that, although parol evidence is admissible to establish a trust, it must be received with caution, and then apparently applied the following standard of proof, as stated in *Costa* v. *Costa* (1953), 124 Ind. App. 128, 115 N. E. 2d 516:

"Courts generally hold that to sustain a trust relation by oral evidence that the proof thereof must be clear and distinct; that it must be shown whether the trust is expressed, resulting or constructive and that the standard

of evidence for such purpose is a superior measure of proof. The evidence must be higher in quality to substantiate the same—that is, in clearness, fullness and persausiveness. (Authorities omitted).

"In order to successfully prove the existence of a trust by parol evidence alone, it must appear that such evidence adduced at the trial is not compatible with any other result." 124 Ind. App. 134, 115 N. E. 2d 519.

The above quoted language from *Costa* is intended as a standard for the trier of fact, not a standard of appellate review which would allow a court on appeal to substitute its judgment for that of the trial court in regard to fact finding. This becomes evident when read in conjunction with subsequent language in *Costa:*

"This court will not weigh the evidence but can only consider the evidence which is most favorable to the finding of the trial court. Further, this court will not disturb the judgment if there is any evidence of probative value substantiating the same. A great portion of the evidence dealt with whether or not an agreement was ever made by the appellees to re-apportion the real estate. The trial court heard and saw the witnesses testify and observed their manner and conduct. Under such circumstances and the conflict of evidence, the law pertaining thereto as herein announced, it is not within the province of this court to substitute its finding and judgment for that of the trial court

"In the case of *Fuller* v. *Fuller* (1913), 52 Ind. App. 488, 100 N. E. 869, the court said:

" 'As the evidence in this case consists largely of oral testimony, we are governed by the well-settled rule which forbids a court on appeal to weigh conflicting evidence. We can consider only the evidence favorable to the finding, and if there is some evidence tending to support it in every essential, it must be permitted to stand, regardless of evidence to the contrary.'

"The rule is further announced which is well-known to the bench and bar in the case of *State Exchange Bank* v. *Paul* (1915), 58 Ind. App. 487, 108 N. E. 532, as follows:

" 'By assignments of error Nos. 3, 4 and 5, appellant asks this court to weigh the evidence. This is an action at law and the evidence is conflicting and principally oral.

It has been repeatedly held by this and the Supreme Court, that the appellate tribunal will not weigh the evidence under such circumstances.' " 124 Ind. App. at 137-138.

The language in the Court of Appeals holding indicates that its decision is based on the failure of Mary to prove the agreement between the parties. There, the court points to the "sharply conflicting" testimony as being the defect in Mary's case. If this is a correct interpretation of the holding, the Court of Appeals is in error under the appellate review standard set forth in *Costa*. Since the evidence *was conflicting*, it was incumbent upon the Court of Appeals *to uphold* the trial court's finding of an agreement, Ardis' intent to keep the property and the resulting fraud.

However, the Court of Appeals gives the appearance of upholding the trial court's findings of fact when it states:

"In its findings of fact the trial court specifically found that Ardis formed an intent to obtain title to the property and keep the benefits for himself and that he made a promise to Mary to pay one-half of the value of the property in order to obtain title. The trial court found that these facts, all of which occurred prior to the making of a deed, constituted fraud on the part of Ardis." 301 N. E. 2d at 662.

The instructions to the trial court on remand are, therefore, not clear, and this will possibly produce an erroneous result. This is because, although the Court of Appeals is correct in holding that Mary has not proved a *resulting* trust, she is the beneficiary of a *constructive* trust *as a result of the fraud which the trial court found*. If the holding is viewed as negating the trial court's finding of the agreement and, hence, the fraud, the imposition of a constructive trust will be precluded.

Plaintiff contends that the Court of Appeals erred in holding that Ardis' fraud prevented a resulting trust from being imposed under the third exception contained in IC 1971, 30-1-9-8. That exception requires that the property conveyed to the grantee "by agreement, and without any fraudulent

intent. . . ." The Court of Appeals held that the statute must be complied with to create a resulting trust and that the fraud here precluded such compliance. Mary argues that the fraud committed by Ardis is not the same fraud that the statute is concerned with, so that, if the statute is applicable here, its requirements are met. She further asserts that Ardis should not be permitted to benefit by his own fraud and be insulated from the equitable relief fashioned by the trial court.

The Court of Appeals erred in determining that fraud, *as it is involved in this case,* precludes a resulting trust theory. The following three statutory sections are relevant to this inquiry:

> *IC 1971*
>
> *"30-1-9-6. When no resulting trust.*—When a conveyance for a valuable consideration is made to one [1] person, and the consideration therefor paid by another, no use or trust shall result in favor of the latter; but the title shall vest in the former, subject to the provisions of the next two [2] sections. [1 R.S. 1852, ch. 113, § 6, p. 501.]
>
> *"30-1-9-7. Presumption of fraud.*—Every such conveyance shall be presumed fraudulent, as against the creditors of the person paying the consideration therefor, and where a fraudulent intent is not disproved, a trust shall, in all cases, result in favor of prior creditors, to the extent of their just demands; and also in favor of subsequent creditors, if there be sufficient evidence of fraudulent intent. [1 R.S. 1852, ch. 113, § 7, p. 501.]
>
> *"30-1-9-8. When resulting trust.*—The provisions of the section next before the last, shall not extend to cases where the alienee shall have taken an absolute conveyance in his own name, without the consent of the person with whose money the consideration was paid; or where such alienee, in violation of some trust, shall have purchased the land with moneys not his own; or where it shall be made to appear that, by agreement, and without any fraudulent intent, the party to whom the conveyance was made, or in whom the title shall vest, was to hold the land or some interest therein in trust for the party paying the purchase-money or some part thereof. [1 R.S. 1852, ch. 113, § 8, p. 501.]"

A careful reading of these sections in *pari materia* reveals that their purpose is to prevent the grantor or the person beneficially interested in the real estate from defrauding third parties by hiding assets. Therefore, when "fraudulent intent" is used in the third exception contained within 30-1-9-8, it is referring back to the presumption of a fraudulent intent contained within 30-1-9-7. The statute is designed to prevent a fraud by the grantor or the beneficiary, committed individually or in collusion with the grantee. A fraud perpetrated by the grantee to the detriment of the grantor and the beneficiary, the other parties to the agreement, is simply not the concern of the statute. This is the present case, and those cases relied upon the Court of Appeals do not hold to the contrary.

Even though the fraud present in this case should not prevent the creation of a resulting trust, Mary, under the facts of this case, is *not* the beneficiary of such a trust. 5 Scott on Trusts § 404.1 states:

> "There are three situations in which the trust which arises is properly called a resulting trust: (1) where an express trust fails in whole or in part; (2) where an express trust is fully performed without exhausting the trust estate; (3) where property is purchased and the purchase price is paid by one person and at his direction the vendor conveys the property to another person."

The case at bar is clearly neither of the first two situations. The third, a "purchase money resulting trust," is that which IC 1971, 30-1-9-6 deals with. But this case does not properly fit within the purchase money resulting trust situation, because it is questionable whether there was any "purchase money" or even a "purchase." In any event, Mary did not allege, nor has she proved, a resulting trust. The cases require strict proof that the claimed beneficiary has actually furnished the purchase price for the property. See *Hutton* v. *Cunningham* (1901), 28 Ind. App. 295, 61 N. E. 1138, 62 N. E. 664. Here, Mary has not proved that the care and comfort

she provided for her mother was intended by the parties as consideration for the "purchase" of the property.

In respect to constructive trusts, Scott states:

"A constructive trust is imposed where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. The duty to convey the property may rise because it was acquired through fraud, duress, undue influence or mistake, or through a breach of a fiduciary duty, or through the wrongful disposition of another's property. The basis of the constructive trust is the unjust enrichment which would result if the person having the property were permitted to retain it." 5 Scott on Trusts § 404.2.

The imposition of a constructive trust is particularly appropriate to the present situation. The trial court first found a constructive trust, as Mary alleged in her complaint, and then changed its finding to read resulting trust, apparently on the basis of Ardis' motion to correct errors. In that motion Ardis claimed that the Court of Appeals had held in Hunter v. Hunter (1972), 152 Ind. App. 365, 283 N. E. 2d 775, that the "Knowing intent to violate a future oral promise is not fraud nor basis for a constructive trust." (Tr. p. 5) This statement is totally erroneous, and nothing to that effect is found in Hunter, supra. Note the following annotations to IC 30-1-9-8:

"Where property is conveyed to another, without consideration, under an agreement that the grantee will reconvey to another, if he refuses to make the conveyance, equity will enforce a constructive trust to prevent the fraud on his part. Cox v. Arnsmann (1881), 76 Ind. 210; Barnett [sic, Barrett] v. Sear (1890), 128 Ind. 261, 27 N. E. 607; McCord v. Bright (1909), 44 App. 275, 87 N. E. 654; Reece v. Leitch (1910), 46 App. 342, 92 N. E. 553."

*The label attached to the instant trust should not be determinative. Both resulting and constructive trusts are creatures of equity, imposed to do justice. This area is too overlapping, confused and ill-defined for the Court*

*of Appeals to rely solely on the fact that the trial court labeled the trust "resulting," and deem it to be controlled by IC 30-1-9-6 through 30-1-9-8. It would be preferable and do more justice to the law if it were merely deemed to be, and treated as, a constructive trust as alleged in Mary's complaint.*

Defendant contends that Mary's testimony as to the understanding between Ardis, his mother, and Mary was inadmissible in that Mary is an incompetent witness under IC 1971, 34-1-14-7; Ind. Ann. Stat. § 2-1716, which reads as follows:

> *"34-1-14-7. When heirs or devisees are parties.*—In all suits by or against heirs or devisees, founded on a contract with or demand against the ancestor, to obtain title to, or to affect the same in any manner, neither party to such suit shall be a competent witness as to any matter which occurred prior to the death of the ancestor. [Acts 1881 (Spec. Sess.), ch. 38, § 277, p. 240.]"

However, the plaintiff is not claiming as an "heir" for purposes of the Dead Man's Statute. Plaintiff's claim is based on an *inter vivos* transaction in which she was a named donee. To such a claim as this, the statute above is simply not applicable. *Snyder* v. *Frank* (1912), 53 Ind. App. 301, 101 N. E. 684. Plaintiff is making *no demand* on the deceased's estate, nor is she bringing the action *against* defendant as an "heir." Similar facts were presented to this Court in *Creamer* v. *Sirp* (1883), 91 Ind. 366. In *Creamer,* plaintiff-sister sued defendant-brother on a contract made by their deceased father. Further facts are taken from the Court's opinion:

> "The facts in the case are these: Appellee and appellant are brother and sister; that on the 31st day of May, 1861, Frederick Creamer and wife, the father and mother of these parties, conveyed by deed to the defendant a certain tract of land containing 70 acres, situated in said county; that on the 17th day of January, 1865, in consideration of said deed, and the transfer of personal property with possession of said premises, the defendant agreed in writing with the father, among other things, after the death of the father and mother, to pay to five sisters $100 each, in annual instalments; that appellee's $100 was payable in two years

after the death of the old people; that the mother died March 3d, 1870, and the father died July 1st, 1878; that the plaintiff, at the time of said agreement, consented to, and accepted said arrangement as a satisfactory adjustment and disposition of her father's property, and then so informed appellant; that after the same became due she demanded the $100 of defendant, which he refused to pay, and this suit was commenced to recover the same on the 11th day of September, 1881.

\* \* \*

"This objection is made under the 499th section of R.S. of 1881, which reads as follows: 'In all suits by or against heirs, or devisees, founded on a contract with or demand against the ancestor, to obtain title to or possession of property, real or personal, of, or in right of, such ancestor, or to affect the same in any manner, neither party to such suit shall be a competent witness as to any matter which occurred prior to the death of the ancestor.'

"While this is a claim growing out of a contract with the ancestor, it is not claimed as heir or devisee, but by grant in the contract, and it does not in any manner affect the ancestor's estate, or any property, real or personal, formerly owned by him.

"The property had all passed into the hands of the defendant in the lifetime of the ancestor, and no claim whatever is set up in relation to any part of said property. It is an individual obligation of the defendant for part payment for the property, this is sued upon. And after the plaintiff accepted the provisions made for her benefit, and notified defendant thereof, she became a party to it, and was then a contract between plaintiff and defendant, without reference to heirship or devise; and we do not think that section 499, *supra,* applies to this case.

"There was no error in admitting such testimony." *Creamer* v. *Sirp* (1883), 91 Ind. 366, 367-69.

Likewise, there was no error in admitting the plaintiff's testimony in the instant case.

Defendant further contends that, even if Mary be a competent witness to testify, her parol evidence was inadmissible to contradict the express terms of the deed. This contention is patently without merit. Parol evidence has always been held admissible in an action to establish or enforce a *constructive* trust. *Cox* v. *Arnsmann*

(1881), 76 Ind. 210. Defendant overlooks the basic rationale behind constructive trusts. Such trusts are creatures of equity and as equitable creations are not governed by the parol evidence rule, statute of frauds, or any other rules of law pertaining to express trusts. Fraud is the cornerstone of constructive trusts. Such fraud was found in the case at bar. We refuse to be persuaded, as defendant seeks to persuade us, to try this cause on the appellate level. Our function is *not* to sit as a trial court, but rather to review and correct errors of law and to accept the facts as they are presented so long as probative evidence supports them. We *fully* endorse the proposition that to establish a constructive trust the evidence must be clear and convincing and not compatible with another result. But we reiterate that this standard of proof is established to guide the trier of fact, and we would be departing afar from deeply imbedded appellate principles if we were to selectively substitute our judgment on appeal.

Transfer is hereby granted and the cause is remanded to the trial court with instructions to enter judgment for plaintiff under a constructive trust. The judgment of the trial court when so modified is affirmed.

Judgment affirmed with instructions.

Arterburn, C.J., DeBruler, Givan and Prentice, JJ., concur.

NOTE.—Reported in 309 N. E. 2d 433.