


FILED

Jun 10 2024, 9:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Regina Geels,

*Appellant*

v.

Lindsay Flottemesch, Mackenzi Hatfield,
and Stephanie Malinowski as Guardian for Marley Malinowski,

*Appellees*

June 10, 2024

Court of Appeals Case No.
23A-PL-2303

Appeal from the Allen Superior Court

The Honorable David J. Avery, Judge

Trial Court Cause No.
02D09-2107-PL-284

**Opinion by Judge Brown**
Judge Riley concurs.
Judge Foley dissents with separate opinion.

**Brown, Judge.**

Regina Geels, the named beneficiary of her deceased brother's two life insurance policies, appeals the trial court's imposition of a constructive trust over the proceeds of those policies in favor of his daughters. She argues the insurance policies at issue are governed by the Employment Retirement Security Act of 1974 ("ERISA") and therefore, state law remedies, such as a constructive trust, are preempted by federal law which directs the distribution of ERISA benefits to the designated beneficiary. We reverse the trial court's judgment imposing a constructive trust and remand with instructions.

**Facts and Procedural History**[1]

David Malinowski died on June 14, 2021. He was survived by his daughters, thirty-six-year-old Lindsay Flottemesch, thirty-three-year-old Mackenzi Hatfield, and nine-year-old Marley Malinowski (collectively "the Daughters"), and his sister, Geels ("Aunt"). David was not married at the time of his death.

---

[1] The facts and procedural history are taken primarily from the trial court's order and judgment because both parties state in their appellate briefs that they agree with the court's findings. The court issued a twenty-seven-page order that included almost 200 findings, a substantial discussion of the issues, numerous unanswered questions, as well as the court's conclusions. We have included what we believe to be the most relevant facts to provide enough context for our decision. The parties should not take our failure to recite all the facts as any indication that they were ignored or overlooked.

In June 2018, David was experiencing financial difficulties and approached Aunt asking her for assistance in hiring an attorney to help with child custody issues between he and his former wife, Stephanie, regarding Marley.[2] Around that same time, David told Aunt he needed to "change his beneficiaries" because Stephanie was "the beneficiary of everything." Transcript Volume II at 119. David did not specify what "everything" was. *Id*. at 115.

[3] On June 19, 2018, David executed his Last Will and Testament (the "Will"). On that same date, he also executed a durable power of attorney appointing Aunt as his attorney-in-fact and granting Aunt broad powers. At all relevant times prior to his death, David was employed with CRST International, Inc. As part of his benefits, David was the recipient of two life insurance policies issued by Metropolitan Life Insurance Company ("MetLife") with a combined benefit value of $150,000.

[4] On June 28, 2018, David's daughter Mackenzi sent a text to Aunt informing her that David told Mackenzi he had instructed Aunt, upon his death, to split his life insurance three ways and to place Marley's share in trust until she turned twenty-one years old. Beginning in July 2018, Aunt and her husband began paying David's medical bills, rent, child support, and utility bills. In short, it appeared Aunt began "acting as a de facto guardian" over David's

---

[2] Marley's mother, Stephanie Malinowski, participates in this case as guardian for Marley. According to the Daughters, Marley died on January 15, 2024. Appellees' Brief at 7. The Daughters state that her death "does not affect the issues before this Court." *Id*.

financial affairs. Appellant's Appendix Volume II at 26. In January 2020, David was admitted to the hospital. He executed a form appointing Aunt as his health care representative. Aunt and David also became joint owners of a bank account to allow Aunt to perform transactions while David was hospitalized.

[5] Upon his release from the hospital, David lived with Aunt and her husband from August to early September 2020. Thereafter, David moved in with his daughter Lindsay for approximately a month, and then he lived with his friends Nathan and Katherine Jensen until around December 2020 when he moved into an apartment. On January 1, 2021, David designated Aunt as the sole primary beneficiary of his two MetLife insurance policies. David died in his apartment on June 14, 2021. His cause of death was determined to be congestive heart failure. On June 29, 2021, Aunt submitted a claim to MetLife for the life insurance proceeds. Three days later, David's daughter, Lindsay, contacted MetLife and informed it that "there was litigation as to the life insurance policies[.]" *Id*. at 29.

[6] On July 9, 2021, the Daughters filed a "Petition to Construe Decedent's Will and Impose Constructive Trust Over Decedent's Life Insurance Policies." *Id.* at 49. They named Aunt and MetLife as defendants. Among other things, the petition alleged that, despite Aunt being named as the beneficiary of the two life insurance policies, the proceeds should be held in constructive trust for the benefit of the Daughters because it was David's intent that the Daughters receive the proceeds, and designation of Aunt as beneficiary was the result of

undue influence or fraud.[3] Aunt filed an answer to the petition, and a counterclaim against the Daughters for defamation. MetLife filed an answer to the petition admitting that David was enrolled in two employer-sponsored life insurance plans totaling $150,000; that as the claim administrator for the plans, MetLife must administer claims in accordance with ERISA; that Aunt was named as the sole primary beneficiary of both policies; and that Aunt had submitted a claim to collect the proceeds. MetLife raised multiple affirmative defenses, including that the Daughters' "claims against MetLife, if any, arise under 29 U.S.C. § 1132(a)(1)(B), of ERISA. To the extent the complaint makes claims or seeks remedies not provided for under ERISA, those claims and remedies are preempted by ERISA and must be stricken." *Id.* at 67. Thereafter, all parties filed an agreed motion for interpleader, which stated in relevant part:

> 7. The Decedent was an employee of CRST International, Inc. ("CRST") and a participant in the employee welfare benefit plan sponsored by CRST (the 'Plan'), governed by the Employee Retirement Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et. seq.*

---

[3] "A constructive trust is a creature of equity, devised to do justice by making equitable remedies available against one who through fraud or other wrongful means acquires property of another." *Leever v. Leever*, 919 N.E.2d 118, 122 (Ind. Ct. App. 2009). Under Indiana law,

> [t]he remedy is available where there is standard fraud or a breach of duty arising out of a confidential or fiduciary relationship. A constructive trust is imposed where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. The duty to convey the property may rise because it was acquired through fraud, duress, undue influence or mistake, or through a breach of a fiduciary duty, or through the wrongful disposition of another's property. The basis of the constructive trust is the unjust enrichment which would result if the person having the property were permitted to retain it.

*Melloh v. Gladis*, 261 Ind. 647, 656, 309 N.E.2d 433, 438-439 (1974) (citations omitted).

8. The Plan was funded, at least in part, by a group life insurance policy # 218164-1-G (the "Policy") issued by MetLife to CRST. A true and correct copy of the Plan documents are attached hereto as Exhibit A[.]

9. MetLife, as claim fiduciary, must administer claims in accordance with ERISA and the documents and instruments governing the Plan. 29 U.S.C. § 1104(a)(1)(D).

10. ERISA defines a beneficiary as "[a] person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

11. The Plan establishes the right of a Plan participant to name his or her beneficiary. *See* Exhibit A[.]

12. A claim was submitted by [Aunt] for the basic life and supplemental benefits under the plan based on [Aunt] being the designated sole primary beneficiary.

13. At or about the same time, Lindsay reported that a lawsuit had been or would be filed to challenge the designation of [Aunt] as sole primary beneficiary.

14. At the time of his death, the Decedent was enrolled under the Plan for basic life insurance coverage in the amount [of] $50,000.00 and supplemental life in the amount of $100,000.00, for a total benefit at issue in the amount of ONE HUNDRED FIFTY THOUSAND and 00/100 Dollars ($150,000.00) (the "Plan Benefits"). The Plan Benefits became payable upon the Decedent's death, pursuant to the terms of the Plan.

15. Based on the pending lawsuit filed by [the Daughters] in which they challenge the claim for the Plan Benefits being paid to [Aunt], MetLife cannot determine whether this Court will find valid the beneficiary designation naming [Aunt] as sole primary

beneficiary, which would result in the Plan Benefits being payable to [Aunt], or whether instead this Court will find invalid the beneficiary designation which would result in the Plan benefits being payable potentially to the Estate or other beneficiaries designated in accordance with the terms of the Plan.

\* \* \* \* \*

21. [All parties have agreed] that MetLife should be allowed to deposit with the Clerk of the Court the Plan Benefits plus any applicable interest due and owing under the terms of the Plan, and MetLife should be dismissed from the action, and the Court should determine the disbursement of the Plan Benefits.

*Id*. at 74.

[7] The trial court granted the agreed motion, and MetLife subsequently deposited the policy proceeds with the clerk of court and filed a motion to dismiss itself as a defendant. The trial court entered an order dismissing MetLife.

[8] After a failed mediation, the case proceeded to a bench trial that began on February 14, 2023. The Daughters sought to prove that Aunt's designation as the beneficiary of David's life insurance policies was the result of undue influence or fraud and/or that Aunt herself, and not David, was the one who designated herself as the beneficiary of the policies. On June 21, 2023, the trial court, *sua sponte*, ordered the parties to participate in a judicial settlement conference. The case was not resolved at the settlement conference.

[9] On August 29, 2023, the trial court issued its findings of fact, conclusions thereon, and judgment. The court concluded that the "life insurance proceeds in the amount of $150,000.00 are subject to a constructive trust on behalf" of

the Daughters. *Id.* at 47. The trial court imposed the constructive trust despite specifically finding that Aunt's designation as the beneficiary of the life insurance policies was not the result of undue influence or fraud, that David was competent to designate Aunt as the beneficiary, and that the Daughters failed to prove that Aunt designated herself as the beneficiary. Rather, the court based the constructive trust on its determination that David "named [Aunt] the beneficiary of the life insurance policies with the instruction that [Aunt] was to distribute the proceeds to his daughters." *Id.* Accordingly, the court ordered that the insurance proceeds were subject to a constructive trust and that each of the Daughters was "entitled to one-third of the amount being held by the Clerk of Allen County consisting of the proceeds of the MetLife life insurance policies[.]" *Id.* at 48. The court entered judgment in favor of the Daughters as to Aunt's counterclaim for defamation.[4]

## Discussion

[10] Aunt challenges the trial court's imposition of a constructive trust over the life insurance policy proceeds. She argues the insurance policies at issue are governed by ERISA and therefore, "State law remedies, including equitable remedies such as a constructive trust, are preempted by federal law[.]" Appellant's Brief at 10.

---

[4] Aunt does not challenge this portion of the trial court's judgment on appeal.

[11] Before reaching the merits of Aunt's claim, we address the Daughters' assertion that Aunt has waived the issue of ERISA preemption on appeal by failing to raise it as an affirmative defense. The crux of Aunt's claim on appeal is that federal preemption of Indiana substantive law requires reversal. This Court has held where, as in this case, an ERISA preemption claim involves the choice of law or type of relief which can be granted, the preemption issue is a matter of defense. *Assocs. Inv. Co. v. Claeys*, 533 N.E.2d 1248, 1254 (Ind. Ct. App. 1989), *trans. denied*. "To properly preserve an affirmative defense the party with the burden of proving it must have set it forth in a responsive pleading or have litigated it by consent of the parties." *Id.* (citations omitted). Failure to do so generally results in waiver of the issue on appeal. *Id.*

[12] We acknowledge that Aunt did not specifically raise ERISA preemption as an affirmative defense in her pleadings. However, her former codefendant, MetLife, did. Indeed, MetLife alerted the Daughters and the trial court that the Daughters' petition for a constructive trust over the insurance proceeds made claims and sought remedies that were "preempted by ERISA." Appellant's Appendix Volume II at 67. The parties' joint agreed motion for interpleader, which was granted by the trial court, clearly stated that David's insurance policies were part of CRST's employee-welfare benefit plan governed by ERISA; that MetLife was bound to administer claims in accordance with ERISA and the documents governing the plan; that ERISA defines a beneficiary as a person designated by a participant; and that CRST's plan established the right of the plan participant to name his or her beneficiary. The

plan documents were attached to the agreed motion for interpleader and also introduced into evidence at trial as Joint Exhibit 1. The plan documents include six pages under the title "ERISA Information." *Id*. at 164. The order granting the agreed motion for interpleader also referenced ERISA as it stated that the court granted "the Agreed Motion for Interpleader based on the benefits payable under an employee welfare benefit plan [], a plan governed by the Employee Retirement Income Security Act of 1974, as amended ('ERISA'), 29 U.S.C. § 1001, et seq., . . . ." *Id.* at 171. Aunt's answer to the complaint asserted that the Daughters "fail[ed] to state a cause of action upon which relief can be granted" and that, "[b]y MetLife's representations and documentation, MetLife inherently knows and has knowledge of the designated beneficiary." *Id.* at 71-72.

[13] Under the circumstances, we conclude that despite Aunt's failure to specifically raise ERISA preemption as an affirmative defense to the Daughters' petition for a constructive trust, the issue was squarely before the trial court and we decline to find the issue waived. Our conclusion in this regard is in line with the general concerns the waiver rule seeks to protect. "The rule of waiver in part protects the integrity of the trial court; it cannot be found to have erred as to an issue or argument that it never had an opportunity to consider." *GKC Ind. Theatres, Inc. v. Elk Retail Invs., LLC*, 764 N.E.2d 647, 651 (Ind. Ct. App. 2002). Additionally, "[a] 'crucial factor' in determining whether a party may raise 'what appears to be a new issue' on appeal is whether the other party 'had unequivocal notice of the existence of the issue and, therefore, had an

opportunity to defend against it.'" *Collins Asset Grp., LLC v. Alialy*, 139 N.E.3d 712, 714-715 (Ind. 2020) (quoting *Moryl v. Ransone*, 4 N.E.3d 1133, 1136-1137 (Ind. 2014)). As both the Daughters and the trial court were on notice that the insurance policies at the heart of this case were governed by ERISA, we proceed to address the merits of Aunt's appeal.

[14] ERISA "establishes minimum federal standards governing employee-benefit plans" and the "responsibility for regulating this system of benefit plans is exclusively a federal concern." *FMS Nephrology Partners N. Cent. Ind. Dialysis Centers, LLC v. Meritain Health, Inc.*, 144 N.E.3d 692, 696 (Ind. 2020), *reh'g denied*. Congress designed ERISA to "to promote the interests of employees and their beneficiaries in employee benefit plans." *Ingersoll-Rand v. McClendon*, 498 U.S. 133, 137, 111 S. Ct. 478, 482 (1990) (quoting *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90, 103 S. Ct. 2890, 2896 (1983)). "To further the goal of uniform federal standards, ERISA contains two preemption provisions." *FMS*, 144 N.E.3d at 696. ERISA's express (or conflict) preemption provision, which is at issue here, is contained in ERISA Section 514(a) which provides that ERISA preempts "all State laws insofar as they . . . relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). This provision "was intended to ensure that plans and plan sponsors would be subject to a uniform body of benefit law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government." *Ingersoll-Rand*, 498 U.S. at 142, 111 S. Ct. at 484.

[15] The United States Supreme Court has taken a broad view of what it means for a state law to "relate to" an ERISA covered plan and has determined that there are "two categories of state laws that ERISA expressly preempts: laws having a 'reference to' and those having a 'connection with' an ERISA plan." *FMS*, 144 N.E.3d at 702-703 (quoting *Gobeille v. Liberty Mutual Insurance Co.*, 577 U.S. 312, 319, 136 S. Ct. 936, 943 (2016)). Among other things, having a "connection with" an ERISA plan means that a state law will be preempted when it "governs . . . a central matter of plan administration" or "interferes with nationally uniform plan administration[.]" *Id*. (quoting *Gobeille,* 577 U.S at 320, 136 S. Ct. at 943).

[16] In *Egelhoff v. Egelhoff*, 532 U.S. 141, 146-147, 121 S. Ct. 1322, 1327 (2001), the Supreme Court addressed whether a state law had a "connection with" ERISA and held that a Washington statute was expressly preempted by ERISA where it required plan administrators to pay beneficiaries as determined by state family law rather than plan documents. The Court reasoned that the statute had an "impermissible connection" with ERISA because it bound plan administrators to a particular choice of state law rules for determining beneficiaries, thereby implicating an area of "core ERISA concern." *Id*. at 147, 121 S. Ct. at 1328. Additionally, the Court found that the statute ran "counter to ERISA's commands" that employee benefit plans "shall 'specify the basis on which payments are made to and from the plan,' § 1102(b)(4), and that the fiduciary shall administer the plan 'in accordance with the documents and instruments governing the plan,' § 1104(a)(1)(D), making payments to a

'beneficiary' who is 'designated by a participant, or by the terms of [the] plan.' § 1002(8)." *Id*. Further, the state law interfered with one of the principal goals of ERISA, which is "to enable employers 'to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits.'" *Id*. at 148, 121 S. Ct. at 1328 (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9, 107 S. Ct. 2211, 2216 (1987)).

[17] We find the Seventh Circuit's opinion in *Melton v. Melton*, 324 F.3d 941 (7th Cir. 2003), relying on *Egelhoff*, instructive. In *Melton*, the fourteen-year-old daughter of the deceased filed suit in Illinois state court seeking to impose a constructive trust upon the proceeds of the deceased's ERISA-regulated group term life insurance policy and prevent the named beneficiary, the decedent's ex-wife, from receiving the proceeds. *Id.* at 945. The *Melton* court held that the daughter could not invoke a state law doctrine to her advantage to determine her status as a beneficiary under an ERISA-regulated employee benefit plan. *Id*. Rather, the Court held that "ERISA preempted Illinois state law with respect to determining the rightful beneficiary of [the decedent's] ERISA-regulated group term life insurance policy." *Id*. Thus, because the decedent's ERISA-regulated plan determined "beneficiary status according to the person(s) named in the plan documents," the court determined that the decedent's ex-wife was the proper beneficiary of the insurance policy. *Id*.

[18] In sum, *Egelhoff* and its progeny make clear that federal law mandates the distribution of ERISA benefits to the designated beneficiary, regardless of state law providing otherwise. *See Metropolitan Life Ins. Co. v. Johnson*, 297 F.3d 558,

566 (7th Cir. 2002) (noting that "*Egelhoff* stands for the proposition that a state law cannot invalidate an ERISA plan beneficiary designation by mandating distribution to another person"). The trial court specifically found that David designated Aunt as the beneficiary of his ERISA-regulated life insurance policies. The trial court's consideration of David's intent in doing so is of no moment under ERISA, and the court's imposition of a constructive trust based upon those factors was clear error. As the designated beneficiary, Aunt is entitled to the proceeds.[5]

[19] Because we find dispositive that preemption applies and defeats the Daughters' claim for a constructive trust pursuant to Indiana substantive law, we need not address Aunt's alternative assertions that the trial court's findings do not support the imposition of a constructive trust or that the court applied an incorrect burden of proof on the Daughters.

[20] For the foregoing reasons, we reverse the trial court's judgment imposing a constructive trust and remand with instructions for the trial court to order the Clerk of Allen County to distribute the proceeds of the life insurance policies to Aunt.

---

[5] It is evident from the trial court's findings that many unanswered questions remained revolving around the designation of Aunt as beneficiary of the policies, with the trial court expressing that it would have "welcomed" more information. Appellant's Appendix Volume II at 37. It appears that once MetLife was dismissed from the case, "there was no further incentive for MetLife" to pursue information regarding the designation of Aunt as beneficiary to ensure the designation "was satisfactory to MetLife." *Id*. Nevertheless, the trial court ultimately resolved this issue in Aunt's favor, concluding that the evidence demonstrated that "as of January 1, 2021, [Aunt] was designated as the primary beneficiary of [David's] two life insurance policies." *Id*. at 42. We will not second-guess this determination.

Reversed and remanded.

Riley, J., concurs.

Foley, J., dissents with separate opinion.

ATTORNEY FOR APPELLANT

Robert J. Palmer
May • Oberfell • Lorber
Mishawaka, Indiana

ATTORNEYS FOR APPELLEES

Nathan S.J. Williams
Shannon K. Connors
Shambaugh Kast Beck & Williams, LLP
Fort Wayne, Indiana

**Foley, Judge, dissenting.**

I respectfully dissent. In my view, Aunt waived the ERISA preemption issue—a choice of law defense—by failing to present the issue to the trial court and instead asking the court to apply Indiana law. Turning to Aunt's challenge to the imposition of a constructive trust, I would conclude that Aunt demonstrated reversible error because the court applied a "preponderance of the evidence" standard for imposing a constructive trust rather than the required "clear and convincing evidence" standard. Due to the application of the wrong standard, I would reverse and remand with instructions to apply the appropriate standard.

## I. Waiver of ERISA Defense

Because ERISA preemption is a choice of law defense, it was incumbent upon Aunt to raise the defense at trial. *See Assocs. Inv. Co. v. Claeys*, 533 N.E.2d 1248, 1254 (Ind. Ct. App. 1989) (declining to address ERISA preemption for the first time on appeal, noting that "[o]ne cannot sit idly by, permit the court to proceed under the wrong law" and then "complain because the court" did so), *trans. denied*. Instead, Aunt exclusively relied on Indiana law, repeatedly representing to the trial court that Indiana law required a judgment in her favor. *See* Tr. Vol. 2 p. 6; Appellee's App. Vol. 2 pp. 6, 12. On appeal, Aunt claims that the choice of law issue is dispositive, but Aunt did not make this assertion below. Under the circumstances, I would conclude Aunt waived the defense.

*See Claeys*, 533 N.E.2d at 1254 (declining to consider a belated ERISA defense, noting that "[p]arties are bound by the theory upon which the case was tried").[6]

## II. Constructive Trust Legal Standard

[24] Concluding that Aunt waived the ERISA preemption defense, I turn to Aunt's contention that the trial court erred in imposing a constructive trust in favor of the Daughters. A constructive trust is a creature of equity that must be established by clear and convincing evidence. *E.g.*, *Melloh v. Gladis*, 309 N.E.2d 433, 440 (Ind. 1974) ("[T]o establish a constructive trust the evidence must be clear and convincing and not compatible with another result."). Aunt argues that the trial court applied the wrong legal standard in imposing the constructive trust—i.e., instead of making a finding based on "clear and convincing evidence," as required, the court imposed a constructive trust based on the preponderance of the evidence. *See* Appellant's Br. pp. 22–23; Appellant's Reply Br. p. 13. Aunt directs us to the trial court's sua sponte

---

[6] Even if Aunt had preserved the ERISA preemption defense, it is unclear whether preemption is compelled based on the nature of the Daughters' claims and the agreed interpleader procedure, which took the ERISA benefit out of the plan administrator's hands and dismissed MetLife from the litigation with prejudice. *Cf. Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 148 (2001) (noting that "[o]ne of the principal goals of ERISA" is to enable "nationally uniform plan administration" and "'provide[] a set of standard procedures to guide processing of claims and disbursement of benefits'" (quoting *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 9 (1987))); *Estate of Kensinger v. URL Pharma, Inc.*, 674 F.3d 131, 135–36 (3d Cir. 2012) (noting that, with ERISA, Congress adopted nationally uniform laws that do not "place[] the administrator in a hopeless bind: if it honored [the common law theory], it could be sued by the named beneficiary for disregarding the mandate of ERISA; if it honored the plan documents, it could be sued by the estate for disregarding [the common law]."); *In re Estate of Couture*, 166 N.H. 101, 110 (N.H. 2014) (collecting cases discussing ERISA preemption and affirming the imposition of a constructive trust, ultimately identifying "a fundamental difference between state law causes of action that challenge a plan beneficiary's right to *receive* the proceeds of an ERISA plan and those that seek to challenge a plan beneficiary's right to *keep* the proceeds of an ERISA plan" (quoting *Brown ex rel. Estate of Sanger v. Wright*, 511 F. Supp. 2d 850, 853 (E.D. Mich. 2007))).

findings, which contained the following statement: "The court finds that the evidence supports a finding that it is *more likely than not* that the [d]eceased named . . . Aunt as the beneficiary of the life insurance policies with the instruction that . . . Aunt was to distribute the proceeds to [the D]aughters." Appellant's App. Vol. 2 p. 47 (emphasis added).

[25] A finding of "more likely than not" is equivalent to a finding based on the preponderance of the evidence. *See, e.g.*, *Escamilla v. Shiel Sexton Co.*, 73 N.E.3d 663, 670 (Ind. 2017). But "clear and convincing evidence"—the standard applicable here—necessitates a stronger showing. Indeed, the corresponding burden of proof is "considerably higher than the 'more likely than not' implications of the preponderance of the evidence standard typically applied in civil cases." *In re A.M.H.*, 732 N.E.2d 1284, 1286 (Ind. Ct. App. 2000). As our Supreme Court explained, the "clear and convincing" standard is an intermediate standard of proof employed in cases "where the wisdom of experience has demonstrated the need for greater certainty, and where this high standard is required to sustain claims [that] have serious social consequences or harsh or far reaching effects on individuals[.]" *In re G.Y.*, 904 N.E.2d 1257, 1260 n.1 (Ind. 2009) (quoting *J.C.C. v. State*, 897 N.E.2d 931, 934 (Ind. 2008)).

[26] Here, the trial court entered sua sponte findings on the constructive trust issue. In this instance, an appellate court "shall not set aside the findings or judgment unless clearly erroneous[.]" Ind. Trial Rule 52(A). And it is well-established that a judgment is clearly erroneous "if it applies the wrong legal standard to properly found facts." *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997).

In *Johnson v. Wysocki*, 990 N.E.2d 456 (Ind. 2013), the plaintiff had the burden of proving "actual knowledge" of a hidden defect. Yet, the trial court found only that the defendant "should have known" of a defect. *Johnson*, 990 N.E.2d at 466–67. The Indiana Supreme Court reversed and remanded, pointing out that "[t]he standard of 'should have known' is lower than 'actual knowledge'" and, as a result, the trial court "applied the wrong legal standard to the facts[.]" *Id.* Regarding the decision to remand, the Court explained that it must defer to the role of the fact-finder. *See id.* at 467. Indeed, the Court explained:

> We decline to assess whether a finding of actual knowledge can be inferred from the facts and surrounding circumstances as reflected in the record before us. We neither weigh evidence nor assess witness credibility. . . . Therefore[,] . . . the wiser approach would be to allow the trial court to take the guidance set forth in this opinion and make [its] own determination first with the full benefit of having been able to assess and weigh the credibility of witnesses and evidence presented at trial.

*Id.*

In this case, as in *Johnson*, remand is warranted so that the trial court may apply the proper legal standard to the evidence. *See id.*; *cf. Melloh*, 309 N.E.2d at 440 (discussing the clear and convincing standard for imposing a constructive trust, "reiterat[ing] that this standard . . . is established to guide the trier of fact" and an appellate court "would be departing afar from deeply [e]mbedded appellate principles if [the court] were to selectively substitute [its] judgment on appeal").

## Conclusion

Because I conclude that Aunt waived the ERISA preemption defense, I cannot join my colleagues in reversing the judgment based upon preemption. As to the imposition of a constructive trust, because I conclude that the trial court applied the incorrect legal standard, I would reverse that portion of the trial court's judgment and remand with instructions to apply the "clear and convincing" standard to the evidence. For these reasons, I respectfully dissent.